**Walter T. EDWARDS, Appellant,**

v.

**Hattie May HUDGINS, Appellee.**

**No. 3879.**

Court of Civil Appeals of Texas.

Waco.

June 8, 1961.

Wade, Davis, Callaway & Marshall, Ft. Worth, for appellant.

Friedman & Brown, Jim McMullen, Ft. Worth, for appellee.

McDONALD, Chief Justice.

This is a suit to set aside a deed on the ground that the grantor did not have sufficient mental capacity to understand the nature and consequences of her act in signing it, at the time of its execution.

Plaintiff, Dr. Walter T. Edwards, is the son and sole heir of Mrs. Virgie Edwards. Mrs. Virgie Edwards was a widow 68 years of age (in 1956). She had lived most of her life in Cleburne, Texas; had suffered a stroke 17 December, 1955; moved to Ft. Worth in December, 1955; and was living in Ft. Worth (where her only son lived), on *29 October, 1956.* About 27 October, 1956, W. B. Hudgins (deceased husband of defendant herein, and a brother of Mrs. Edwards) employed attorney J. E. Ferguson to prepare a deed to some 16 acres of land

in Johnson County, Texas belonging to Mrs. Edwards, whereby Mrs. Edwards conveyed such land without any consideration to W. B. Hudgins; on 29 October, 1956, attorney Ferguson carried such deed to Ft. Worth, and secured the execution of same by Mrs. Edwards, at her home. On 1 November, 1956, Attorney Ferguson filed a proceeding in Johnson County to have W. B. Hudgins appointed guardian of Mrs. Edwards. Mrs. Edwards died on 10 June, 1958 and Mr. Hudgins died in 1957.

The instant suit was brought by Walter T. Edwards as sole heir of Mrs. Virgie Edwards, as plaintiff, against Mrs. Hattie May Hudgins as sole heir and independent executrix of the estate of W. B. Hudgins, deceased, to set aside the deed to the 16 acres of land. Trial was to a jury which, in answer to the one special issue submitted, found:

Mrs. Virgie Edwards did have sufficient mental capacity to understand the nature and subject matter of the deed, and the consequences of her act in signing it, at the time of its execution on 29 October, 1956.

The Trial Court entered judgment for defendant upon such verdict.

Plaintiff appeals, contending:

1) The Trial Court erred in permitting the witness J. E. Ferguson to testify as to his opinion of the mental capacity of Mrs. Edwards on the date the deed was executed for the reason that it was not shown the witness had sufficient contact with Mrs. Edwards to form a conclusion as to her mental capacity.

2) The verdict of the jury is so contrary to the overwhelming preponderance of the evidence as to be manifestly wrong and unjust.

3) The Trial Court erred in not granting a new trial because of certain jury misconduct, in that prior to the jury's answering of the issue, one of the jurors told the jury that the witness George Cooper, a witness

for plaintiff, was unworthy of belief, a liar, and did not pay his debts.

◼ We revert to plaintiff's 1st contention that J. E. Ferguson was not a competent witness to testify as to Mrs. Edwards' mental capacity, because of insufficient contact with her. The record shows that Mr. Ferguson prepared the deed herein involved and carried it from Cleburne to Ft. Worth for Mrs. Edwards to sign. He was admitted to see Mrs. Edwards and talked with her for some 20 to 30 minutes. He talked with her about why and how she had been brought to Ft. Worth and about her desire to return to Cleburne; about the property involved in the deed; and other general conversation. He testified he formed an opinion as to her mental soundness and mental balance, and that such opinion was that she was mentally sound. The testimony is competent, and any objection goes to the weight rather than the admissibility of the evidence. See: Mueller v. Banks, Tex.Civ.App., 273 S.W.2d 88, and cases therein collated. Contention 1 is overruled.

Plaintiff's 2nd contention is that the jury's verdict is against the great weight and preponderance of the evidence. The jury found that Mrs. Edwards was mentally competent when she executed the deed on 29 October, 1956. The record reflects that Mrs. Edwards was a widow, 68 years of age; that her only child is the plaintiff herein; that on 17 December, 1955 she suffered a stroke; that from the date of the stroke to her death on 10 June, 1958 she suffered with arterio-sclerosis which affected her brain, heart, and circulatory pattern. The issue is whether she had sufficient mental capacity on 29 October, 1956 to understand the nature and consequences of her act. By signing the deed she gave her brother the 16 acres involved, without consideration. She had previously, by will executed in 1950, left the property to her son, the plaintiff herein.

◼ It is the duty of this court under the point of error urged to consider and weigh

all evidence in the case and set aside the verdict and remand the cause for a new trial, if we conclude that the verdict is against the weight and preponderance of the evidence and manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Prewitt v. Watson, Tex.Civ.App., 317 S.W.2d 954, 159 Tex. 305, (n. r. e.); 320 S.W.2d 815.

Plaintiff's wife testified that Mrs. Edwards never acted like herself after she suffered the stroke on 17 December, 1955; that her mind could not stay on any subject for any period of time; that she had delusions that people were stealing from her; and that she was in jail; that in her opinion she was not mentally balanced.

Mrs. Ramsey, a nurse who cared for Mrs. Edwards and was with her constantly during the spring of 1956 and from September 1956 until March 1957, testified Mrs. Edwards had delusions, thought people were spying on her; thought she was in jail; and that her mind wandered; that she failed to recognize people she had known for years; and in her opinion Mrs. Edwards was mentally unbalanced. She testified that on the very day Mrs. Edwards signed the deed she was mentally unbalanced; and that she thought Mr. Ferguson was George Cooper (who was tenant on her farm).

Mrs. Lindsey testified she visited Mrs. Edwards daily in June, 1956 and that Mrs. Edwards never knew who she was and could not carry on an intelligent conversation for any length of time; and in her opinion Mrs. Edwards did not know what she was doing.

Mrs. Derby, a long-time friend of Mrs. Edwards, testified that she visited Mrs. Edwards in 1955 and 1956; that Mrs. Edwards did not realize who she was; asked to be taken to see her (Mrs. Edwards') mother, who had been dead for several years; that she felt that Mrs. Edwards had lost her mind. That Mrs. Hudgins (defendant herein) told her in September, 1956 that she doubted if Mrs. Edwards would recognize her and that Mrs. Edwards was getting worse.

Mrs. Pearl Hudgins (no relation to defendant), but a sister-in-law of Mrs. Edwards, testified she had known Mrs. Edwards for many years; that she saw Mrs. Edwards a few days before she moved to Ft. Worth, but that Mrs. Edwards did not know her and confused her with another sister-in-law; that she had discussed Mrs. Edwards' mental condition with defendant on several occasions in the summer of 1956, and that defendant told her Mrs. Edwards could not keep help because of her mental condition.

Mr. George Cooper, tenant on Mrs. Edwards' farm for the past 8 years, testified he had known her for 30 years; that he saw her regularly while she was in Cleburne and 3 times after she moved to Ft. Worth; that during the 3 months before she moved to Ft. Worth her mind was slipping; that he saw her in Ft. Worth in the summer of 1956 and she thought she had some hogs on the farm, whereas she had never had any; that in the fall of 1956 he visited her and she was very weak and he could not even settle with her for the rents for the year.

Plaintiff herein, Dr. Walter T. Edwards, (son of Mrs. Edwards) is a medical doctor and testified that his mother's stroke of 17 December, 1955 affected her mind; that at first she had good recovery, but thereafter it was a kind of come and go situation which grew steadily worse; that this is usual in situations of this kind; that Mrs. Edwards had delusions that people were trying to poison her dog; that in his opinion his mother was not mentally capable of evaluating her acts and the consequences thereof at the time of executing the deed.

Dr. Steven W. Wilson, a medical doctor specializing in diseases of the cardio vascular system, testified that he had treated Mrs. Edwards from 17 December, 1955, when she had her stroke, until 14 November, 1956; that she had a stroke which directly affected her brain; that she was disoriented in the hospital for some time after her stroke; that he saw her in June, 1956, August 1956, and in November, 1956; that

in November, 1956 she was completely disoriented and had no reasoning process in her mind at all at that time; that she did not have sufficient reason process to know what she was doing; that when he saw her in August, she did not have sufficient mentality to know what she was doing from the standpoint of reason and logic, but did from the standpoint of physical needs; that Mrs. Edwards' trouble characteristically produces a deterioration of the mind that continues to grow worse as time goes on.

Mrs. Hattie May Hudgins, defendant, testified she had known Mrs. Edwards for many years, was a sister-in-law, and that Mrs. Edwards never failed to recognize anyone; never had delusions; and that there was nothing wrong with her mind up until her death.

Mr. Arlie Sebring testified his wife had cared for Mrs. Edwards for a period in Cleburne; that his wife was now dead; but he visited Mrs. Edwards in June, 1956 and she recognized him and thought she was of sound mind. He further testified that she kept a dog and 5 puppies in her house and would not let them go out to relieve themselves and that she talked about people trying to poison her dogs.

Mr. J. E. Ferguson testified he carried the deed to Ft. Worth to get Mrs. Edwards to sign it; talked with her for 20 or 30 minutes; and believed her to be of sound mind. He testified further that she told him she had been brought to Ft. Worth against her will and was held there against her will. Mr. Ferguson filed application in November, 1956 to have Walter Hudgins appointed guardian for Mrs. Edwards on the ground of physical incapacity.

Dr. Shiflett, a medical doctor, testified he was Mrs. Edwards' doctor while she was in Cleburne; that she was all right at that time; but that he had never seen her after she had her stroke on 17 December, 1955.

Mrs. Edwards was a virtual invalid with a full time attendant after her stroke. All medical evidence is to the effect she was completely disoriented after her stroke; as was the evidence of her son, daughter-in-law, nurse, sister-in-law, friends and tenant. The evidence that she was competent on 29 October 1956 is from the defendant. Mr. Sebring, who did not see her after June 1956, and whose testimony reflects he did not see her very often, and who did not know of her stroke, testified he thought she was competent. He did relate facts, however, about the dogs and her belief that people were trying to poison the dogs, which to some extent weakens his conclusions. Dr. Shiflett never saw her after she had her stroke. Attorney Ferguson never saw her except for 20 or 30 minutes; and he relates facts which weaken his testimony; and filed for a guardianship on her within 2 days after seeing her.

■ Under the record made, we think the jury's verdict is against the overwhelming weight of all the evidence.

■ Plaintiff's 3rd contention is levelled at jury misconduct. While the jury were deliberating on the issue, 2 or 3 jurors discussed in the presence of the jury the witness George Cooper. (Mr. Cooper, as noted, was tenant on Mrs. Edwards' farm; saw her in the summer and fall of 1956, and testified very forcefully for the plaintiff). The jurors stated that Cooper was a liar; would not pay his debts; owed one of the jurors $2900 he would not pay, and was unworthy of belief. At the time these remarks were made the jury was divided in its view on how the issue should be answered. Under the state of the record before us the foregoing seriously discredited Mr. Cooper, who had seen Mrs. Edwards both shortly before and shortly after the occasion of signing the deed on 29 October, 1956, and who made a very forceful witness for the plaintiff, and whose testimony went to the very heart of the case at bar. We think that the foregoing constituted jury misconduct; that it was material; and probably affected the jury's answer to the issue submitted. See: State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217; Elizondo v. Regan,

Tex.Com.App., 55 S.W.2d 540; Storey v. Zuniga, Tex.Civ.App., 254 S.W.2d 415 (n. r. e.); Thompson v. Goode, Tex.Civ. App., 221 S.W.2d 569 (n. r. e.).

Points 2 and 3 are sustained and the cause is reversed and remanded.

Reversed and remanded.