In re ESTATE of Nora A. PRICE, Deceased.

No. 5594

Court of Civil Appeals of Texas.

El Paso.

June 19, 1963.

Rehearing Denied July 17, 1963.

Guinn & Guinn, Al Truex, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, James S. Moore, El Paso, for appellee.

FRASER, Justice.

This is an appeal from a summary judgment. Some time prior to 1958 Mrs. Nora A. Price had been adjudged an incompetent,

and a guardian of her property had been appointed. Shortly before February, 1958 she had been taken by her son to a rest home near Pasadena, Texas. The record reveals that she had not seen her son for thirty or thirty-five years due to the fact that, when he was a young baby, Mrs. Price's husband had run off with her sister, taking the little boy with them. After Mrs. Price's return to El Paso she evidenced a desire to her lawyers to change her will on the ground that she felt her son had misled and mistreated her, claiming among other things that she thought she was going to his home, and not a rest home, and that the son, his wife and the people at the rest home in Pasadena had not been kind to her. Therefore, on her return to El Paso it appears that she got in touch with her attorneys in order to make a new will. In pursuance of this request a restoration proceeding was initiated in the County Court of El Paso County, and on February 25, 1958 an Order of Restoration was entered by the said County Court of El Paso County. Shortly after, or—as it appears—immediately thereafter, on the same day and date, Mrs. Price executed the will herein contested. The record reveals that her attorney handed her a copy of the will in the presence of the county judge and other witnesses, and read it to her, and that she said it was exactly as she wished it to be. She then immediately signed and executed the will in the presence of her attorneys and other witnesses and the county judge, who himself appears to have been a witness to the will. The new will left her property to her brother, a disabled World War II veteran, with remainder after her brother's death to a family friend named Dan King. She left the sum of $1.00 to her son, the contestant herein. Mrs. Nora A. Price passed away approximately two years after executing this will, to-wit, January 14, 1960, at the age of 79 years.

The actual legal history of the controversy outlined above is as follows: The contestant, Herbert R. Stone, is appellant, and the proponent, The State National Bank of El Paso, Independent Executor Designate of the Estate of Nora A. Price, Deceased, is appellee. The case originated on January 18, 1960, in the County Court at Law No. Two of El Paso County, Texas on the application of proponent for the probate of the Last Will and Testament of Nora A. Price, dated February 25, 1958. A contest was filed by contestant, the decedent's son, the contest alleging unsound mind (including insane delusions) and undue influence. The probate court admitted the will to probate on May 20, 1960 and contestant duly appealed to the 65th District Court of El Paso County, Texas, although the appeal bond is not of record. The proponent filed its motion for summary judgment and restricted the motion to the issue of the sound mind of the decedent (including the issue of insane delusions). No reply or affidavits opposing the motion were filed by contestant. On October 16, 1961, proponent's motion for summary judgment was granted by the 65th District Court. The case was then transferred to the 120th District Court of El Paso County for a jury trial on the remaining issue of undue influence. On February 14, 1962 a judgment was entered on the jury verdict in favor of the proponent, the judgment incorporating the prior ruling on proponent's motion for summary judgment. The contestant has restricted his appeal to the court's action on proponent's motion for summary judgment and he presents no points of error relative to the jury finding on undue influence.

Appellant has presented six points of error relative to this appeal, complaining that the trial court erred (1), in precluding him from offering evidence as to the testamentary capacity and soundness of mind of testatrix; (2), in precluding submission of issues as to the testamentary capacity or soundness of mind of testatrix; (3) and (4), in granting the motion for summary judgment and holding as a matter of law that testatrix possessed testamentary capacity and a sound mind and was not suf-

fering from any insane delusion; and (5) and (6), that the court erred in precluding contestant from offering evidence or submitting issues relative to alleged insane delusions of testatrix. Because these points are inter-related we will dispose of all of them as one group, without specifically mentioning or separating them.

 The record as presented to us reveals that when the proponent presented its motion for summary judgment, it attached to such motion a true copy of the judgment of restoration. This copy is certified as proven correct by the county clerk, and thereby assumes the dignity of a properly authenticated document or record. The appellant, or contestant, did not controvert the motion of proponent by affidavit or otherwise. Therefore, the district judge had before him a motion for summary judgment and a true copy of a judgment that removed the legal disability of guardianship of Mrs. Price and declared her sane and of testamentary capacity. The judgment of the County Court has never been attacked, and so the district judge had before him, in our opinion, a prima facie case or conclusion that Mrs. Price was sane and possessed of testamentary capacity when she executed her will. We believe that the matter of insane delusions is encompassed or included within the question of testamentary capacity. There was no evidence, according to the record, presented to the district judge by affidavit or otherwise indicating that the mental condition of testatrix had changed in any way from the time the judgment of restoration was entered until she executed her will. Included in the record before us is the testimony of one of the attorneys, who testified in that part of the lawsuit that was tried to a jury and dealt with the matter of undue influence. His testimony indicates that the will was executed in the same room, and with the same persons present, as when the judgment of restoration was handed down; and further, that only a matter of moments elapsed from the time of the rendition of the judgment or order

of restoration and the execution of the will, in the presence of the same county judge who had rendered the judgment of restoration. This testimony, of course, apparently occurred after the rendition of the summary judgment, and it must be noted that a different judge rendered that decision from the one who heard the matter of undue influence. We include these matters, therefore, only to point up the situation and facts that were existent at the time the will was executed. We believe that the motion of the proponent, with its accompanying true copy of the judgment of restoration, presented a prima facie case of testamentary capacity at the time the will was executed, and that while possibly the contestant could have joined issue and created a fact situation, he did not do so, because the record shows no pleadings, affidavits or documents presented to the district judge in opposition to the motion for summary judgment. The judge, therefore, had before him what we believe was an uncontested and uncontroverted prima facie case of testamentary capacity. No substantial fact issue, therefore, was left to be determined. We repeat, no direct attack on the judgment of restoration has ever been made. For these reasons we believe, and hold, that the trial court was correct in granting proponent's motion for summary judgment, as no fact dispute or issue material to the lawsuit had been created or presented to the trial judge.

██ It has been stated in McDonald Texas Civil Practice, Volume 4, section 17.26, page 1388 et seq., that where a motion is supported by affidavits, depositions, admissions or other extrinsic evidence, sufficient upon its face to establish facts which if proven at the trial, would entitle the movant to an instructed verdict, the opponent must specify opposing evidence which will raise an issue as to some material fact or justify his failure to do so. Further, this text says that the sound rule is that a genuine issue of material fact is not raised by allegations in the pleading when they are controverted by affidavits

or other evidence (here, we have a certified copy of a judgment) in the absence of counter affidavits or evidence to sustain them. This text also points out that the court may decide that there is a material fact dispute and, of course, conversely he could decide that there was an absence of such. We have no evidence in the record here that contestant was prevented from filing any controverting affidavits, extrinsic evidence or documentary evidence.

■ Both parties to this controversy brief and discuss what they claim to be the only real issue in this appeal. The matters we have set forth above are, in our opinion, the real and decisive issues in the case. We will discuss, however, appellee's argument, which he sets out as follows: "The sole issue in this appeal is whether or not a person who executes a Last Will and Testament on the same day her guardianship is removed and she is restored by court order to sound mind, is *on that day*, and no other, conclusively presumed to be of sound mind for purposes of making a will." We do not believe this is, or ought to be, the law in Texas. Appellee cites two cases, to-wit, Tipton v. Tipton, 140 S.W.2d 865 (Tex.Civ.App.1940, writ dismissed, judgment correct), and Starnes v. Campbell, 119 S.W.2d 116 (Tex.Civ.App.1938, writ dismissed). These cases, of course, were decided before the procedure of Summary Judgment had become a part of Texas law. There was no such remedy at the time either of these cases was decided. Also, it will be noted from reading the cases that, in each case, the matter was submitted to a jury to determine the sanity or legal capacity of the individual involved. Therefore, we do not think they really support appellee's position.

■ Further, it is clear that if the argument advanced by appellee is or should become the law of Texas, we would then be faced with a situation where a person who had his sanity restored, or a guardianship removed, could execute legal instruments during the remainder of the day that

such judgment was rendered, without the possibility of attack on the mental or testamentary capacity of the maker of the instrument. We see no reason why this should be the law. It may not be likely, but it certainly is possible, that a person who had won a verdict of restoration at ten o'clock in the morning could conceivably, due to some strain or excitement or any cause whatever, again become incapacitated before the day was finished. The judgment of restoration does not, in our opinion, guarantee sanity or testamentary capacity. It merely removes a prior adjudication to the contrary. Sanity or insanity are rebuttable presumptions. Certainly if a person had once been adjudged to be incompetent the possibility that the illness might recur ought not to be overlooked, as contrasted with a person who had never been adjudicated incompetent. Further, if this position of appellee be sustained, it could result in an unusual situation—to-wit, assuming that two people both executed wills at three o'clock on the afternoon of the same day, the will of the person whose sanity or testamentary capacity had never been questioned could be, without question, attacked on the ground of lack of testamentary capacity due to insanity or other mental derangement. But the will of a person who had been found to be incompetent and so adjudged, but who had been successful in obtaining an order of restoration earlier in the day—which order removed the judicial stigma of incompetency—could not, according to appellee's arguments, be attacked or assailed on the ground of mental incompetency or lack of testamentary capacity. We cannot see why such condition should exist, or why the possibility of such a strange or bizarre condition should be legally created or admitted to be the law. We therefore believe that the order of restoration is just what it says it is—the restoration of a person to mental normalcy, with no guarantee that that condition will exist for any period of time, including minutes or hours of the same day. We do not believe that such order of restoration gives the recipient thereof an

unassailable and exalted legal immunity for the rest of that particular day. We think that such order is merely a matter of evidence, attesting to the sanity of the individual as of the time it was rendered, and does not preclude any attack on any legal instrument or activity executed by the individual later in the same day. We think this matter is well enunciated in the case of Johnson v. Pilot Life Insurance Company, decided by the Supreme Court of North Carolina in 1940, and cited as 217 N.C. 139, 7 S.E.2d 475, 128 A.L.R. 1375.

Therefore, we feel that we are constrained to reject appellee's above described position as set forth in this opinion and in his brief. But because we do not feel that contestant created, by affidavit or otherwise, a fact situation, we hold that the trial judge was correct and within his authority in granting proponent's motion for summary judgment.

Appellant's points are therefore overruled, and the judgment of the trial court is affirmed.