In re **ESTATE of Nora A. PRICE, Deceased.**

**No. 5772.**

Court of Civil Appeals of Texas.

El Paso.

March 16, 1966.

Rehearing Denied April 6, 1966.

See also Tex., 375 S.W.2d 900.

Guinn & Guinn, W. Barton Boling, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, J. Samuel Moore, Jr., El Paso, for appellee.

CLAYTON, Justice.

This is a will contest in which The State National Bank of El Paso, Texas, which was named as trustee and independent executor by the decedent, Nora A. Price, is the proponent and appellee here, and Herbert R. Stone, son of decedent, is the contestant and appellant here. The will of Mrs. Price was admitted to probate and letters testamentary were granted to The State National Bank by order of the County Court at Law No. Two of El Paso County, Texas, dated May 20, 1960. Contestant appealed to the District Court of El Paso County, Texas, basing his contest on the grounds of lack of testamentary capacity and undue influence. The record reveals that some time prior to 1958 Mrs. Price had been adjudged incompetent and a guardian of her property had been appointed. The record further reveals that shortly before February, 1958 she had been taken by her son to a rest home near Pasadena, Texas and that she had not previously seen her son for thirty or thirty-five years due to the fact that, when he was a young baby, Mrs. Price's husband had run off with her sister, taking the little boy with them. After

Mrs. Price's return to El Paso from Pasadena, Texas, she evidenced a desire to her lawyers to change her previous will on the ground that she felt her son had misled and mistreated her, claiming among other things that she thought she was going to his home, and not a rest home, and that the son, his wife and the people at the rest home in Pasadena had not been kind to her. Therefore, on her return to El Paso it appears that she got in touch with her attorneys in order to make a new will. In pursuance of this request a restoration proceeding was initiated in the County Court of El Paso County, and on February 25, 1958 an Order of Restoration was entered by the said County Court of El Paso County. Immediately thereafter, on the same day and date, Mrs. Price executed the will herein contested. The record reveals that her attorney handed her a copy of the will in the presence of the County Judge and other witnesses, and read it to her, and that she said it was exactly as she wished it to be. She then signed and executed the will in the presence of her attorneys and other witnesses and the County Judge, who himself appears to have been a witness to the will. The new will left her property to the State National Bank in trust for her brother, a disabled World War II veteran, with remainder after her brother's death to a family friend named Dan King. She left the sum of $1.00 to her son, the contestant herein. Mrs. Nora A. Price passed away approximately two years after executing this will, to-wit, January 14, 1960, at the age of 79 years. On the trial of the appeal the trial court granted proponent's motion for summary judgment on the issue of testamentary capacity, and submitted the issue of undue influence to a jury. The sole ground asserted in proponent's motion for summary judgment was the proposition that the order of restoration was conclusive on the court and on all parties as to the issue of testamentary capacity on the part of Mrs. Price as of the time it was entered and for the remainder of the day. Attached to the motion were certified copies of the will and the order. Upon a verdict of no undue influ-

ence, judgment was entered for proponent, admitting the will to probate and affirming the appointment of the bank as independent executor of the estate. From this judgment appeal was taken to this court. In that appeal appellant presented six points of error, complaining that the trial court erred (1), in precluding him from offering evidence as to the testamentary capacity and soundness of mind of testatrix; (2), in precluding submission of issues as to the testamentary capacity or soundness of mind of testatrix; (3) and (4), in granting the motion for summary judgment and holding as a matter of law that testatrix possessed testamentary capacity and a sound mind and was not suffering from any insane delusions; and (5) and (6), that the court erred in precluding contestant from offering evidence or submitting issues relative to alleged insane delusions of testatrix. In an opinion dated June 19, 1963 (369 S.W.2d 647) we held that the order of restoration by the County Judge of February 25, 1958 was merely a matter of evidence, attesting to the sanity of the individual as of the time it was rendered, and did not preclude any attack on any legal instrument executed by the individual later the same day, but that because contestant had not created, by affidavit or otherwise, a fact situation, the trial court was correct and within his authority in granting proponent's motion for summary judgment, and the judgment of the trial court was affirmed. However, the Texas Supreme Court, on March 18, 1964, In Re Price's Estate, 375 S.W.2d 900, held "it must be assumed that the contestant filed his petition in good faith, and would have undoubtedly filed a controverting affidavit had it been indicated that any question other than one of law was being presented to the court for determination or that the court would take into consideration in passing upon the motion any matters not therein urged. We believe that the summary judgment rule does not contemplate that under such circumstances, contestant's right to a trial would be foreclosed", and said court therefore reversed the judgments of the trial court and of this court of civil appeals

and remanded the cause "for a trial upon the issue of testamentary capacity".

On this appeal the contestant raises seven points of error: No. 1, the failure of the trial court to give contestant's requested instruction number one, pertaining to insane delusions; No. 2, the failure to submit contestant's requested issue number two relative to insane delusions; and No. 3, the absence from the court's charge of any instruction or issue as to insane delusions when the same was adequately raised by the evidence; No. 4, the failure of the court to submit contestant's requested issue number one pertaining to undue influence; and No. 5, the absence from the charge of any issue or instruction pertaining to undue influence when same was adequately raised in the evidence; No. 6, refusing to allow contestant to read those portions of his pleadings relating to undue influence; and No. 7, in refusing contestant the right to open and close final arguments to the jury.

It must be remembered that the Supreme Court remanded this case to the trial court "for a trial upon the issue of testamentary capacity". In his charge at the time of the new trial the court gave the following instruction to the jury:

"You are instructed that by the term 'sound mind' as used in this charge is meant, that the person making the will must at the time of the execution of the will, have had sufficient mental ability to understand the business in which she was engaged, the effect of her act in making it, and the nature and extent of her property; she must be able to know her next of kin and the natural objects of her bounty and the claims upon her; she must have memory sufficient to collect in her mind the elements of the business about to be transacted, and to hold them long enough to perceive their obvious relation to each other, and to be able to perform a reasonable judgment as to them."

The sole issue submitted was as follows:

"QUESTION NO. 1:

"Do you find from a preponderance of the evidence, that at the time Nora A. Price executed the instrument offered for probate as her last will and testament, dated February 25, 1958, that she was of sound mind, as that term has been defined herein? Answer 'yes' or 'no'.",

to which the jury answered "Yes".

Contestant's requested instruction number one was that, if at the time of the execution of the will by Mrs. Price on February 25, 1958 she was under the influence of an insane delusion or delusions about her son, Herbert A. Stone, which affected the disposition of her property which she was making, then she did not have at that time "sound mind or testamentary capacity". And further, that "an insane delusion is the belief of the existence of a state of supposed facts which no rational person would have believed." His requested issue number two would have instructed the jury that if at the time of the execution of the will Mrs. Price was under the influence of an insane delusion or delusions, again defining the term, affecting the disposition of her property she was making, that she lacked at that time testamentary capacity. This was followed by "Question No. Two" which would ask the jury whether at the time of the execution of the will Mrs. Price was under the influence of an insane delusion or delusions. His requested Issue No. One was a definition of undue influence followed by an issue as to whether Mrs. Price was caused to execute the will of February 25, 1958 by the exercise of undue influence upon the part of Dan King (the remainderman in her will).

■ Appellant's requested instruction and issue relative to undue influence were properly refused by the trial court and Points of Error numbers 4, 5 and 6 before us now are overruled. The issue of undue influence was presented to the jury in the first trial and answered adversely to the

contestant. On appeal from that trial the matter before us was solely on the question of the correctness of the summary judgment on the matter of testamentary capacity and no points of error relative to the jury finding on undue influence were presented to us or to the Supreme Court on the first appeal. This matter, therefore, has already been adjudicated adversely to appellant and has become the law of the case and will not be considered here.

The contestant's Points of Error numbers 1, 2 and 3 pertaining to insane delusions present greater difficulty.

"An 'insane delusion' has been defined as a belief in a state of circumstances that no rational person would accept as true. Although the term implies an adherence to a fixed belief against reason and evidence, a mere mistaken belief or an erroneous or unjust conclusion is not an insane delusion if there is some foundation in fact or some basis on which the mental operation of the testator may rest, even though it may be regarded by others as insufficient. And as bearing on the question of whether the decedent has some grounds for belief claimed to have been a delusion, events that have occurred since execution of the purported will may be considered.

"Evidence of delusions is probative on the issue of a testator's soundness of mind under statutory requirements. But delusions are not a ground of attack against the probate of a will, except as they indicate a lack of testamentary capacity * * *."

61 Tex.Jur.2d 136, 137, Wills, § 30. Delusions. Contestant relies heavily upon Lindley v. Lindley, 384 S.W.2d 676 (Tex.S.Ct., 1964). That opinion recites:

"'* * * Each case must rest on its own circumstances, the question of law for the trial court being whether the contestant has introduced *substantial evidence,* not only of a mental error affecting the terms of the will, but that the per-

sistence of this mental error was caused by defective cerebration.' See Annotation, 175 A.L.R. 882, 889." (Emphasis supplied.)

"* * * Contestants were entitled to have an instruction on insane delusions given if there is any evidence of probative value which, with the inferences that may reasonably be drawn therefrom, will support a finding that Mrs. Lindley was laboring under such a delusion which affected the terms of her will. In determining that question, moreover, we must consider only the evidence which, when viewed in its most favorable light, tends to support such a finding, and must disregard all evidence that would lead to a contrary conclusion."

In the Lindley case, the judgments of the trial court and the court of civil appeals were reversed and the case remanded, the court having found that there appeared to be no basis whatever for certain beliefs of the testatrix and under the circumstances contestant was entitled to an instruction on insane delusions and that the court erred in refusing to give the same. In the instant case, we do not believe that the disposition made of her property by testatrix in trust for her disabled brother with remainder to a family friend is so unnatural as to indicate insane delusions on her part, or lack of testamentary capacity. And even if unnatural, "An unnatural disposition of property in and of itself does not justify denial of admission of a writing to probate on the ground of incompetency, since one may dispose of his property as he sees fit, regardless of ties of relationship." 61 Tex.Jur. 2d 138, Wills, § 32—Unnatural disposition of property.

On February 25, 1958, the date of the restoration hearing at which decedent was declared to have been restored to her right mind and to be of sound mind, and the date upon which she executed her last will, she was interrogated by her attorney who drew the will and by County Judge McGovern as to what her property consisted of, what her

business affairs were, her attitude toward the restoration proceedings and her desire to execute the new will, and she then proceeded with the execution of the will, to which the County Judge, a trust officer of the State National Bank, and Mrs. Hartman (Godin), the operator of the rest home at which decedent was staying in El Paso, were witnesses. Dr. Arlin B. Cooper, a neuropsychiatrist of El Paso, examined decedent on February 17, 1958 at the request of the trust officer who had informed him that decedent wanted to change her will. His examination was for the purpose of determining whether decedent was mentally clear, if she knew fully the nature and extent of her estate and whether any individual was unduly influencing her in changing her will. The doctor, in addition to his testimony, made a report of his findings dated February 19, 1958, which was introduced in evidence and which recited that deceased at the time of the examination was correctly oriented, with no sign of a psychotic process present, either overt or latent. Her memory was sharp, detailed and accurate, and she was fully aware of the nature of her estate and her plans for the future seemed to be logical and based on sound judgment. The doctor further found that she was of sound mind and capable of administering the affairs of her estate, and capable of executing legal documents and wills and testaments. He found that her expression of a desire that the Trust Department of the State National Bank be given the power to administer to her needs in case she should become ill or incapacitated was logical. At the trial of the case the doctor testified that the decedent, concerning her son, had expressed her unhappiness at being placed in a nursing home, and she was unhappy with the attentions in the nursing home. These complaints, "more or less general", "could have been somewhat overdrawn" but "certainly not to any major degree to cause her to be incapacitated for making a will". Another doctor of internal medicine, deceased at the time of the trial, but who had been Mrs. Price's personal physician, wrote a letter dated February 15, 1958, which was introduced in evidence and which recited that he had examined Mrs. Price on February 14th and found her markedly improved, mentally alert and capable of caring for her affairs.

■ Without further burdening this record by outlining the other testimony at the time of the new trial in this cause, we find and hold that the trial judge could have issued a peremptory instruction on the issue of insane delusions and was therefore justified in refusing to submit such issue in other than the form submitted on "sound mind". We accordingly overrule appellant's points of error numbers one, two and three.

■ Appellant's seventh point of error complains of the action of the court in refusing contestant the right to open and close final arguments to the jury. The will in this case is a self-proving will. Section 88(b) of the Probate Code, V.A.T.S., provides:

" § (b)  Additional Proof for Probate of Will.

To obtain probate of a will, the applicant must also prove to the satisfaction of the court:

(1) If the will is not self-proved as provided by this Code, that the testator, at the time of executing the will, * * * was of sound mind; * * *."

Contestant takes the position that under the law and facts in this case the actual burden of proof on the whole case at the new trial was on the contestant, and the contestant should have been allowed to open and close final arguments, and makes the further statement that "The right to open and close final arguments undoubtedly had a substantial bearing on how the jury finally answered the single issue submitted in the case." Contestant's position as to the burden of proof seems to find support in Brewer v. Foreman, 362 S.W.2d 350 (Tex.Civ.App., 1962; n. w. h.), in which it is stated that the effect of Sec. 88 of the Probate Code

is to place the burden of proof as to the issue of soundness of mind on the contestants. However, if the trial court here was in error in not granting contestant the right to open and close final arguments, there is no showing of resulting injury to appellant, or that such error actually brought about the rendition of an improper verdict by the jury. We therefore hold such error, if any, to be harmless and we accordingly overrule appellant's seventh point of error.

Finding no error in this record, the judgment of the trial court is affirmed.