Marie Park REYNOLDS and Royce Park
Carter, Appellants,

v.

Leona Blanche PARK, Appellee.

No. 8278.

Court of Civil Appeals of Texas,
Amarillo.

Sept. 18, 1972.

Rehearings Denied Oct. 16, 1972.

Richards & Ferguson, Robert C. Ferguson, Dalhart, for appellants.

Herbert C. Martin, Amarillo, for appellee.

ELLIS, Chief Justice.

This is a will contest case. Leona Blanche Park, appellee, sought to have a will of her deceased husband, Sidney Hamilton Park, admitted to probate in the County Court of Sherman County. The will was dated October 27, 1970. Two daughters of the testator, Marie Park Reynolds and Royce Park Carter, appellants, contested this application to probate the will and in lieu of the contested instrument, applied for the probate of an earlier will and codicil dated September 18, 1953 and July 29, 1959, respectively. The county court admitted the October 27, 1970 instrument to probate thus denying the application to probate the will and codicil which had been tendered by the appellants. Ap-

pellants timely perfected their appeal to the 69th Judicial District Court, and the case was there tried de novo to a jury. The district court's judgment admitted to probate the October 27, 1970 will and denied the contestants' application to probate the instruments dated September 18, 1953, and July 29, 1959. Such judgment prompted this appeal.

Sidney Hamilton Park and Ruth M. Park executed a joint will on September 18, 1953, whereby the survivor was to take the estate, and, upon the death of the survivor or in case of simultaneous death, the appellants were to take a life estate, subject to certain limitations, with a gift over in fee simple to the grandchildren, if any, of such testator and testatrix. Ruth M. Park died on May 6, 1956, and her joint will was admitted to probate whereby Sidney Hamilton Park took her estate as beneficiary under her will. Sidney Hamilton Park married Leona Blanche Park, appellee, on July 2, 1957, and subsequently executed a codicil to his September 18, 1953 will, essentially bequeathing to Leona Blanche Park all of his separate property acquired after the death of his first wife and his share of the community property acquired during his marriage to Leona Blanche Park. In addition to the noted bequests, the codicil republished and redeclared the joint will which he had executed with his first wife. Sidney Hamilton Park was admitted to a hospital in Amarillo, Texas during the month of February, 1970. He underwent surgery during the period he was hospitalized and apparently sustained one or more strokes after his surgery but before being dismissed from the hospital sometime during May, 1970. Upon his release from the hospital he returned to his home in Sherman County, and his condition improved to the extent that he was able to walk with the aid of a cane. Mr. Park had a convulsion or seizure on October 17, 1970, and was rushed from his home to a hospital in Borger, Texas. He remained in the hospital until his death on November 5, 1970. On October 27, 1970, Mr. Park requested that an attorney be contacted so he could make a will. An attorney was called and he visited Mr. Park in the hospital to gather information for the preparation of the last will and testament. Later that day, Mr. Park executed the document which had been drafted and it was attested by two witnesses. Under the provision of this instrument, his estate was divided between his wife, appellee herein, and his two daughters, appellants herein, and it is this document that was admitted to probate.

Appellants, contestants of the October 27, 1970 will, based their contest on three grounds. By their pleadings in the trial court they contend that Sidney Hamilton Park did not sign the alleged will dated October 27, 1970; that he was of unsound mind and incapable of making a will on that date; and that he executed the document under undue influence from his wife, Leona Blanche Park. They also made application for the probate of the earlier will and codicil.

In the district court trial, two special issues were submitted to the jury for determination: (1) whether the testator possessed testamentary capacity on October 27, 1970, and (2) whether he signed the document in question bearing that date. An issue on undue influence was requested but it was not submitted by the court. The jury answered both of the submitted issues favorably to the appellee, proponent of the October 27, 1970 will.

In their first of eight points of error, appellants contend the trial court erred in admitting lay testimony, over timely objections, that the testator was of sound mind. It is appellants' position that a proper predicate had not been laid which would allow the witnesses to testify relative to the soundness of the testator's mind.

■ A careful review of the record reveals that all but one of the witnesses whose testimony is here complained of had known the testator for a number of years.

Other than a witness who had spoken with the testator one or two days before he was admitted to the hospital, each of the witnesses had visited the testator in the hospital and observed him and conversed with him while he was there. There is no rigid rule or standard setting forth the proper predicate for qualifying a lay witness to give testimony as to the mental condition of a testator. The most definitive guide that has been established in this area of the law is that "where a lay witness has had sufficient opportunity through personal contacts, conversations, association with and observation of the person in question to reasonably form an intelligent opinion as to such person's sanity, based upon his own first hand knowledge, he is qualified to express such opinion." Santos v. Morgan, 195 S.W.2d 927, 930 (Tex.Civ.App.—Austin 1946, writ ref'd n. r. e.). Also see Miguez v. Miguez, 221 S.W.2d 293 (Tex. Civ.App.—Beaumont 1949, no writ). The determination of whether a given lay witness is qualified under this rule rests in the discretion of the trial court, and in the absence of an abuse of this discretion the admission of such testimony is not error. Guerra v. San Antonio Sewer Pipe Co., 163 S.W. 669 (Tex.Civ.App.—San Antonio 1914, no writ); Whatley v. McKanna, 207 S.W.2d 645 (Tex.Civ.App.—Eastland 1948, writ ref'd n. r. e.); Small v. Taylor, 54 S. W.2d 151 (Tex.Civ.App.—Austin 1932, no writ); Singleton v. Carmichael, 305 S.W. 2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.). The trial court's discretion extends not only to the qualification of the witness but also to the remoteness of his testimony. Greene v. Watts, 332 S.W.2d 419 (Tex.Civ.App.—Dallas 1960, no writ); Fulcher v. Young, 189 S.W.2d 28 (Tex. Civ.App.—Austin 1945, writ ref'd w. o. m.); Singleton v. Carmichael, supra. Although it has been held that a subscribing witness must qualify by stating facts upon which his opinion is based, Whatley v. McKanna, supra, even a conversation with the testator ten minutes prior to the execution of the will has been held sufficient to qualify the attesting witness to give his opinion as to the sanity of the testator. Mueller v. Banks, 273 S.W.2d 88 (Tex. Civ.App.—San Antonio 1954, writ ref'd n. r. e.). In view of the foregoing, we do not believe that the trial court abused its discretion in admitting the testimony of the proponent's witnesses. Appellants' first point of error is accordingly overruled.

In their second point of error, appellants complain of the court's instruction given in its charge in connection with the issue on testamentary capacity. The issue here involved is Special Issue No. 1, which was submitted as follows:

"Do you find from a preponderance of the evidence that Sidney Hamilton Park did not have testamentary capacity on October 27, 1970, when the instrument offered in probate was executed?"

The jury answered this issue,

"He did have testamentary capacity."

The instructions immediately following this issue were:

"You are further instructed that to make a valid will, the person making the will must have testamentary capacity at the time of the execution of the will. By the term 'testamentary capacity' as used in this charge, is meant that the person at the time of the execution of the will has sufficient mental ability to understand the business in which he is engaged, and the effect of his act in making the will, and the general nature and extent of his property. He must also be able to know his next of kin and the natural objects of his bounty and their claims upon him. He must have memory sufficient to collect in his mind the elements of the business to be transacted and to hold them long enough to perceive, at least their obvious relation to each other, and to be able to form a reasonable judgment as to them.

"You are further instructed that the term 'testamentary capacity' and 'sound mind' have the same meaning."

The appellants contend that the trial court erred in instructing the jury that the terms "testamentary capacity" and "sound mind" have the same meaning. The point of error is particularly urged in light of the nonexpert testimony which was admitted over appellants' timely objection. This point is based on the argument that having allowed some of the witnesses to testify to the soundness of the testator's mind and then instructing the jury that "testamentary capacity" and "sound mind" have the same meaning had the effect of confusing the jury as to whether or not the witnesses had testified as to the testator's legal capacity to make a will, which they are not allowed to do, or had testified as to the testator's mental condition, which is permissible. The landmark case of Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621 (1895), held that a witness, whether lay or expert, may not give testimony which is a legal conclusion as to whether a person has the mental capacity to make a will. This holding was reiterated in Carr v. Radkey, 393 S.W.2d 806 (Tex.Sup.1965); however, in that case the Texas Supreme Court held that a witness may be asked, assuming he knows or is a properly qualified expert, whether the testator knew or had the capacity to know the objects of his bounty, the nature of the transaction in which he was engaged, the nature and extent of his estate, and similar questions. Some of the witnesses in the case before us testified relative to whether Mr. Park knew the extent of his land or whether he knew to whom his property was going, but they also testified that in their opinion the testator was of sound mind or was rational. Other witnesses testified only that based on their contacts with the testator he was of sound mind, rational or mentally competent. Testimony of this nature as to soundness of mind has been admitted over objection and upheld on appeal as probative evidence for the jury to weigh. Singleton v. Carmichael, supra; Edwards v. Hudgins, 347 S.W.2d 745 (Tex.Civ.App.—Waco 1961, no writ).

To the extent that the same definition has been applied to sound mind and to testamentary capacity—Nass v. Nass, 224 S.W.2d 280 (Tex.Civ.App.—Galveston 1949, aff'd on other grounds, 149 Tex. 41, 228 S.W.2d 130, 1950)—the instruction is not incorrect, and the court properly could have employed the phrase "sound mind" in lieu of the words "testamentary capacity" in the special issue; however, we cannot approve the instruction *per se*, for the terms are equated by definition but not in applicability, inasmuch as sound mind relates to mental condition and testamentary capacity relates to the legal capacity to make a valid will.

The testimony regarding the testator's mental condition was properly admitted and it was the function of the jury to measure the believability and weight of the evidence and apply it to the definition of testamentary capacity given by the court. The record contains a bill of exception setting forth the jury foreman's testimony relating to the jury's deliberation in reaching a verdict and there is nothing in his testimony to indicate that the objectionable instruction caused the jury to render a verdict it would not otherwise have rendered; to the contrary the foreman said he was trying to follow the court's charge and that he reached his verdict according to the evidence he heard from the witness stand. Under the facts and circumstances of this case, we are of the opinion that the instruction was not harmful. Appellants' second point of error is overruled.

In their third point of error, appellants complain of the trial court's failure to submit the appellants' requested special issue and the accompanying special instructions inquiring whether Blanche Park had exercised undue influence over Sidney Hamilton Park. Briefly, appellants contend that the issue of undue influence is raised by evidence to the effect that: (1) Mrs. Park denied Mr. Benton, a friend of the testator, the privilege of visiting him during the periods of the testator's hospitalization;

(2) Mrs. Park prevented Mrs. Reynolds, testator's daughter, and her husband from visiting the testator outside her presence, although there was indication that he desired to talk with them alone; (3) Mrs. Park was present with the testator at all times during his hospitalization including the time of the execution of the will; (4) Mrs. Park exerted strong influence over her husband in relation to the handling of a business transaction a few months before his death; and (5) testator was in a weakened physical and mental condition prior to and at the time of the execution of the will.

■ Undue influence has been judicially defined as that control exercised over the mind of a testator which would cause him to submit his free agency and free will and cause him to substitute the will of another thereby causing the testator to do what he would not have done but for such control. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138 (1914); Lipper v. Weslow, 369 S.W.2d 698 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.). Although a contestant may prove undue influence by circumstantial evidence, Long v. Long, 133 Tex. 96, 125 S.W.2d 1034 (1939), the evidence must nevertheless be probative of the issue and not merely create a surmise or suspicion that such influence existed at the time the will was executed. Also, the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character and must not be equally consistent with the absence of undue influence. Stewart v. Miller, 271 S.W. 311 (Tex.Civ.App.—Waco 1925, writ ref'd); Rothermel v. Duncan, 369 S.W.2d 917 (Tex.Sup. 1963). The Rothermel case, page 922, set forth a three prong test in determining whether a testament should be set aside on the grounds of undue influence. In that test, the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence.

■ In the present case, the circumstantial evidence relied on by the appellants, which they purport gives rise to an issue of undue influence, is partly explained in the record. Although Mrs. Reynolds contends that she was unable to see her father alone, the record discloses no instance of her being denied the privilege of visitation or of her requesting to be alone with her father. Also, there is evidence that Mrs. Park was constantly present with Mr. Park because he did not want her to leave him with someone else. Mrs. Park's alleged exertion of influence over the testator concerning a business deal refers to the occasion of her writing a check to pay a debtor some months prior to the making of the will when Mr. Park was in the Amarillo hospital. The record indicates that because Mr. Park had suffered a stroke, Mrs. Park wrote the check, with Mr. Park's approval, so that the matter could be settled as quickly as possible without upsetting Mr. Park. The testator's weakened physical and mental condition would only be indicative of his susceptibility to influence, but would be no evidence that such influence existed in fact. The other facts relied on by appellants are, we believe, consistent with the absence of undue influence. Also, there is no testimony that Mrs. Park ever made any statement concerning his executing a will or had anything to do with the arrangements or proceedings pertaining to the drafting and execution of the will. It is our opinion that there is no evidence of an influence which, viewed in the light of the attendant circumstances, would be considered as undue.

■ Even assuming *arguendo* that there is some evidence of the existence and exertion of influence by Mrs. Park, and we believe there is none, appellants fail to meet the second part of the three part *Rothermel* test in that there is no evidence

of the operation of that influence which would subvert or overpower the mind of the testator at the time of the execution of the testament. Mrs. Park was not present when Mr. Park requested that an attorney be contacted so he could have another will drafted. Although Mrs. Park was present while Mr. Park was giving the information that the attorney would need in drafting the will, the only other witness present at the time could not remember what, if anything, Mrs. Park may have said during that conference. According to the witnesses present at the execution of the will, Mrs. Park said nothing to Mr. Park while he was having it read to him by the attorney, while testator was reading it to himself or while he was signing it. It is well settled that opportunity to exercise influence is not proof that the same was in fact exercised. Black v. Black, 240 S.W.2d 458 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.). There is evidence that on the day of execution Mr. Park was in a weakened condition and had been administered some drugs. However, there is no evidence that Mrs. Park exercised any influence over Mr. Park either at the time the will was drawn or at the time it was executed and the same cannot be inferred, without surmise or suspicion, from those facts surrounding the drafting or execution of the will. It is noteworthy that the record is replete with testimony as to Mr. Park's strong will, and although he was in a weakened condition, there is no evidence that his will was subverted and that of Mrs. Park substituted therefor. The facts of the cases in this area of the law are so diverse that it would be futile to attempt to align or to distinguish the facts of other cases with those of the present case. "Each case must stand on its own bottom as to the legal sufficiency of the facts proven." Long v. Long, supra. We hold that the trial court was correct in not submitting the requested special issue on undue influence and the special instruction pertinent thereto because of the lack of evidence to support that issue. Appellants' point of error number three is overruled.

Appellants, by their eighth point of error, contend that the trial court erred in specially instructing the jury concerning Art. 3716, Vernon's Ann.Revised Civil Statutes, commonly referred to as the Dead Man's Statute, on the grounds that the parties waived the requirements of that article. The trial court instructed the jury that as part of the law applicable to the case Marie Reynolds, as the surviving daughter of Sidney Hamilton Park, deceased, is not permitted by law to give evidence relating to any transaction or conversation with or statement by Sidney Hamilton Park, unless called to testify by Blanche Park. It is alleged that appellee waived objection to Mrs. Reynolds' testimony as to her transactions or conversations with Sidney Hamilton Park when appellee's counsel cross-examined Mrs. Reynolds as to certain transactions with the deceased. Appellants contend that since the appellee waived her objections to Mrs. Reynolds' testimony under this statute, the trial court should not have given the instruction as set forth above. Appellants further contend that such instruction had the effect of drawing the jury's attention to the absence of Royce Park Carter, one of the contestants, thereby causing the jury to be influenced to resolve the facts against a person absent or to cause the jury to conclude that if the other contestant had been present, her testimony would have been unfavorable to Mrs. Reynolds, the contestant who was present. Also, they argue that this had the effect of being a comment on the weight of the evidence or lack of it. The submission of the instruction is also alleged as harmful error in that the instruction was so framed as to lead the jury to believe that they should not consider certain of Mrs. Reynolds' testimony unless that testimony had been given after Mrs. Reynolds was called to the witness stand by appellee's attorney. The appellants contend that the alleged erroneous instruction may have caused the jury not to have considered the testimony given by Mrs. Reynolds when she was called to the witness stand by appellants, although

there was no objection to that particular testimony as being within the Dead Man's Statute.

■ At various times during Mrs. Reynolds' direct testimony appellee objected on the basis that the testimony was excluded under the Dead Man's Statute. However, at one point when Mrs. Reynolds was being examined as to her conversation with her father in reference to a letter he had mailed her (purportedly containing only blank pages), appellee's counsel objected to the conversation as being excluded by Article 3716, at which time appellants' counsel asserted to the court that the appellee had waived any objection under the Dead Man's Statute. Appellee's counsel then withdrew his objection and the testimony was allowed into evidence. Mrs. Reynolds then testified as to other conversations with the decedent and that testimony was admitted without objection. Appellee's counsel takes the position that at the time he ceased making objections, all of the evidence had been placed before the jury either in testimony or by appellants' inquiry revealing evidence that continuously required appellee to object to such evidence as being in violation of the statute. Further, on cross-examination she gave testimony to the effect that her father was of sound mind on October 25, 1970. This testimony was certainly not favorable to appellants' position on the issue of testamentary capacity, and as to that portion of her testimony, the instruction could not have been more favorable to appellants. Without deciding, but assuming *arguendo* that the above mentioned withdrawal of objection constituted a waiver of any objection under Article 3716, thereby making any instruction as to the Dead Man's Statute error, we believe the error to be harmless. Rule 434, Texas Rules of Civil Procedure. A careful review of Mrs. Reynolds' testimony concerning any transaction or conversation with her deceased father indicates that the same evidence was either in evidence from other witnesses or was not of probative force with respect to any issue submitted to the jury or tendered to the court for submission to the jury. The absence of Royce Park Carter, the other contestant, was explained through the testimony of Mrs. Reynolds. Further, we must assume that the jury followed its instructions and only excluded from its consideration that testimony of Mrs. Reynolds which related to her conversations and transactions with the decedent.

After considering the evidence in its totality, we are of the opinion that the instruction was harmless and did not cause the rendition of an improper judgment, nor do we believe that it had the prejudicial collateral effects of which the appellants complain. Clower v. Brookman, 325 S.W. 2d 440 (Tex.Civ.App.—San Antonio 1959, no writ); Priem v. Adams, 352 S.W.2d 324 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.). Appellants' eighth point of error is overruled.

Appellants, by their fourth point of error, contend that the trial court materially erred in refusing to permit them to open and close oral argument to the jury because by the charge of the court and the special issues they had the burden of proof on the whole case. Appellants presented a motion to the trial court requesting that they be allowed to open and close final argument and this motion was overruled.

The issues submitted to the jury as to Mr. Park's (1) testamentary capacity and (2) his execution of the instrument dated October 27, 1970, were so framed as to place the burden of proof upon the appellants-contestants. It is this placement of the burden which contestants contend gave them the right to open and close final argument to the jury.

■ It is well established that the proponent of a will, when that will is contested at the time it is offered for probate, has the burden of proving that the testator possessed testamentary capacity. Texas Probate Code, § 88(b)(1), V.A.T.S.; Watson v. Watson, 340 S.W.2d 344 (Tex.Civ.

App.—Fort Worth 1960, writ dism'd). Therefore, in such a case it would be error for the trial court to submit, over objection, an issue casting the burden of proof upon the contestant on the issue of testamentary capacity. In the present case no objection was made to the way the submitted issues were drawn. Contestants here contend that since the October 27, 1970 will was a self-proved will and offered into evidence as such, that they, the contestants, had the burden of proof and that the issue, as submitted, properly placed the burden of proof upon them. Their argument is premised upon the language of § 88, Texas Probate Code, and dicta of two courts of civil appeals opinions. It is our opinion that the contestants' position is not supported by the pertinent provisions of the Code.[1]

Section 59 of the Code sets forth the requisites of a will and further gives the prerequisites of a self-proved will and an example of the self-proving affidavit. At the conclusion of § 59, it is stated:

"A self-proved will may be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved. In particular and without limiting the generality of the foregoing, a self-proved will may be contested, revoked or amended by a codicil in exactly the same fashion as a will not self-proved."

Section 88 of the Code provides in part that "(t)o obtain probate of a will, the applicant must also prove to the satisfaction of the court: (1) If the will is not self-proved as provided by this Code, that the testator, at the time of executing the will,

. . . was of sound mind; . . . ."

We believe that the two sections of the Code provide nothing more than a method for the proponent of a will to prove his testator's testamentary capacity, *prima facie*, without the necessity of obtaining the testimony of the subscribing witnesses. This construction is supported by authoritative expressions from our Supreme Court on this subject. In Re Price's Estate, 375 S.W.2d 900 (Tex.Sup.1964), the court stated at page 903:

". . . Our Probate Code, § 88, (formerly Art. 3348) provides that, notwithstanding the general rule that in law a person is presumed to be of sound mind until the contrary is shown, before a will may be admitted to probate it must be proved that the testatrix was of sound mind at the time of its execution, unless the will is self proved as provided elsewhere in the Code. *Of course the self proving provisions have only the effect of authorizing the substitution of affidavits in lieu of testimony offered before the court.*" (Emphasis ours.)

The Supreme Court in Boren v. Boren, 402 S.W.2d 728 (Tex.Sup.1966) cited In Re Price's Estate for the proposition set forth above. It appears to be the more cogent reasoning that a self-proving affidavit attached to a will allows a proponent a manner of proof in which to make out a *prima facie* case, but does not remove from him the burden of proving the testamentary capacity of his testator. As a matter of law he still belabors under that burden, but once he has produced the self-proved will into evidence, the contestant, to rebut the presumption, must go forward with his evidence.[2]

1. Reference here is to the Texas Probate Code.

2. Appellants rely on the dicta found in Brewer v. Foreman, 362 S.W.2d 350 (Tex. Civ.App.—Houston, 1962, no writ), wherein it is stated: ". . . The effect of this provision of the Code [Texas Probate Code, § 88] is to place the burden of proof on this issue [soundness of mind] on the contestants." Dictum to

the same effect may be found in the case of In Re Price's Estate, 401 S.W.2d 98 (Tex.Civ.App.—El Paso 1966, writ ref'd n. r. e.) which cited the Brewer case for the same proposition. However, we believe this dicta failed to distinguish the burden of proof on the soundness of the mind issue from that of the burden of going forward with the evidence. See Garcia v. Galindo, 199 S.W.2d 488 (Tex. Civ.App.—San Antonio 1946: rev. on

Thus, in the present case, as a matter of law, the burden of proof on the soundness of mind issue remained on the appellee, proponent of the October 27, 1970 will, and the burden of proof on that issue was erroneously placed upon the contestants by the charge of the court and the special issue. Contestants did not take exception to the charge of the court or the framing of the soundness of mind issue which placed the burden of proof upon them. It has been succinctly stated in 3 McDonald, Texas Civil Practice, § 13.02, p. 460, that:

". . . Today, however, under Rule 269, '(t)he party having the burden of proof on the whole case, or on all matters submitted by the charge . . . shall be entitled to open and conclude the argument.' If the only issues presented submit questions upon which the defendant has the burden of proof, he is entitled to open and close the argument. But the error of placing the burden upon the defendant where it correctly should be placed upon the plaintiff will not authorize the defendant to open and close the argument: the right rests with the party having the burden on the issues submitted, and a formal error cannot deprive him of that right."

Here the burden of proof rested upon the proponent and the erroneous placement of that burden upon contestants did not confer upon them the right to open and close the argument. Keller v. Miller, 207 S.W. 2d 684 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.). The contestant may not under Rules 266 and 269, T.R.C.P., voluntarily assume the burden of proof on the testamentary capacity issue unless they unequivocally admit the same or unless testamentary capacity is established as a matter of law, therefore removing the issue from the case. Seigler v. Seigler, 391 S.W.2d 403 (Tex.Sup.1965). Under the circumstances of the contestants' failure to object to the issue and under the facts of this case, we do not believe that the court abused its discretion in denying the motion to open and close the argument. Even if it were proper that contestants should have been granted the privilege of opening and closing final argument to the jury, we believe the trial court's failure to grant them that privilege was harmless error. Rule 434, T.R.C.P. Although the jury foreman stated that he remembers best what he hears last, and that the jury was deadlocked six to six for about an hour, yet he definitely stated that he reached his verdict by considering the evidence. This testimony considered with the whole record does not show that there was the rendition of a judgment which would not have been rendered but for the court's denial of the privilege of opening and closing the argument. Thus, even if there were error in this regard, it would be considered as harmless. Appellants' fourth point of error is overruled.

Appellants, under their fifth point of error, allege that the trial court materially erred in refusing a new trial in view of the testimony of Roy O. Hickman, the foreman of the jury, which was proffered to prove that appellants had suffered material harm in not being allowed to open and close the jury argument. Appellants argue that the trial judge did not consider the testimony. The testimony was presented to, and the record reflects it was heard and considered by, the trial judge; but, in any event, in view of our holding under appellants' fourth point of error, the fifth point does not present error and is overruled.

In their points of error six and seven appellants contend that the trial court erred in not admitting into probate their offered September 18, 1953 will and July 29, 1959 codicil because all of the proof necessary for admittance was presented,

other grounds, 199 S.W.2d 499), holding that when a prima facie case of testamentary capacity is made out, the burden of proof does not shift from the proponent, but rather it has the effect of passing the burden of proceeding with the evidence to the contestant.

whereas there was no evidence, or insufficient evidence as a matter of law, presented by appellee to authorize the probate of the October 27, 1970 will. It appears from the record that the 1953 and 1959 instruments were not contested by appellee except as the 1970 instrument would revoke those prior instruments. Appellants' brief and argument under these points of error is directed to (1) the alleged failure of the appellee to prove the October 27, 1970 will was not revoked and (2) a failure of the appellee to adequately prove that the named executrix was qualified and not disqualified to serve in such capacity.

■■■■■ Section 88(b)(3), Texas Probate Code, requires that the proponent of a will prove that the will offered to probate has not been revoked. Proponent is aided in meeting this burden by a rebuttable presumption of continuity that the will has not been revoked when the will is produced in court for probate, and no suspicion is cast upon the genuineness of the instrument as the last will of the testator by evidence that the will has been revoked. Ashley v. Usher, 384 S.W.2d 696 (Tex. Sup.1964); May v. Brown, 144 Tex. 350, 190 S.W.2d 715 (1945); McElroy v. Phink, 97 Tex. 147, 76 S.W. 753 (1903), 77 S.W. 1025 (1904). In the present case, the October 27, 1970 will, containing a clause revoking all prior wills, was produced into court with proof of due execution. This had the effect of creating the presumption of continuity that the will has not been revoked. That resumption can only be rebutted by probative evidence that the will has been legally revoked under § 63, Texas Probate Code, wherein it is provided that:

"No will in writing, and no clause thereof or device therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the testator destroying or canceling the same, or causing it to be done in his presence."

Appellants have produced no evidence in the instant case that would comply with the above prescripts for revocation. Nevertheless, appellants contend that suspicion has been cast on the October 27, 1970 document by evidence presented in support of their contentions that the will was not signed by Sidney Hamilton Park, that he did not possess testamentary capacity when he executed the questioned document and that if he did execute the will he did so under undue influence. We believe the appellants have misinterpreted the method by which the presumption of nonrevocation may be rebutted. Their proof is directed to suspicion cast on the valid execution of the will and not to its revocation. Obviously, if there is not a valid will, because of some legal deficiency, there can be no revocation and on the other hand if there is a valid will, then it will take some evidence of revocation of that will to rebut the presumption that such will has not been revoked.

Appellants have offered no proof or even raised a suspicion that Sidney Hamilton Park revoked his will in any manner provided for above. Those cases relied on by appellant are distinguishable from the present case in that in those cases there was some evidence of a subsequent written instrument which revoked the will being contested. We are of the opinion that the rebuttable presumption of continuity that the will has not been revoked meets proponent's burden of proof in this regard. Estate of McKinney v. Hair, 434 S.W.2d 217 (Tex.Civ.App.—Waco 1968, writ ref'd n. r. e.).

■■■■■ Additionally, appellants contend that there is no proof in the record which shows that Leona Blanche Park is entitled to letters testamentary and is not disqualified by law. Section 88, Texas Probate Code, requires that the applicant who seeks to probate a will or to obtain issuance of letters testamentary or of administration

must first prove to the satisfaction of the court: "That the person for whom letters testamentary or of administration are sought is entitled thereto by law and is not disqualified." A review of the record reflects that Mrs. Leona Blanche Park was named as independent executrix in the October 27, 1970 will. There is no evidence in the record in regard to whether Mrs. Park was qualified and not disqualified to serve in the capacity of executrix. The trial court's judgment states that "it further appears that the proponent, Leona Blanche Park, is named in said Will as Independent Executrix and that she is entitled by law to letters," but the judgment *does not order* the issuance of letters testamentary. In our opinion the absence of proof that Mrs. Park is not disqualified as executrix and the failure of the trial court to order the issuance of letters testamentary necessitates a reversal of the judgment insofar as it relates to the entitlement to letters and a remand to the trial court for further proceedings with respect to the appointment of a personal representative of the estate. Except for the remand for further proceedings regarding the personal representative, the appellants' sixth and seventh points are overruled.

The other collateral matters mentioned, but neither briefed nor argued by the appellants, are not specifically dealt with herein since they are not encompassed within the points of error raised on this appeal.

In view of our disposition of the various points of error submitted, that part of the trial court's judgment admitting the October 27, 1970 will to probate and denying the probate of the earlier will and codicil is affirmed. That portion of the judgment relating to the qualification or appointment of a personal representative to administer the estate is reversed and such matter is remanded to the trial court for further proceedings.