Marie Park REYNOLDS et al., Appellants,

v.

Leona Blanche PARK, Appellee.

No. 8533.

Court of Civil Appeals of Texas, Amarillo.

March 17, 1975.

Rehearing Denied April 14, 1975.

Richards & Ferguson, Floyd H. Richards, Dalhart, for appellants.

Herbert C. Martin, Amarillo, for appellee.

REYNOLDS, Justice.

The trial court summarily determined that a joint will, executed by the deceased husband and wife and probated by the surviving husband prior to his execution of a later will adjudicated to be his last will, was not a contractual will and that, in any event, the adjudication of the validity of the husband's subsequent will was res judicata of all issues pertaining to the joint will. Since the validity of a last will does not defeat any rights of the beneficiaries under a prior contractual will and because there is a fact issue as to whether the prior joint will was executed pursuant to an oral contract, summary judgment was improper. Reversed and remanded.

### 1. Antecedents of this Appeal

The summary judgment record presents the background of, as well as the action taken in, this litigation. During the marriage of Sidney H. Park and Ruth M. Park there were born two daughters, Marie

Park Reynolds and Royce Park Carter, each of whom had a daughter named, respectively, Barbara Louise Reynolds Alkofer and Sidney Carter Poholsky. On September 18, 1953, Sidney H. Park and Ruth M. Park, sometimes referred to as Sidney and Ruth in the interest of brevity, jointly executed their wills which, omitting the witness clause and signatures thereto, read as follows:

## LAST WILL AND TESTAMENT

STATE OF TEXAS, ⎤ KNOW ALL MEN BY THESE
COUNTY OF SHERMAN ⎰ PRESENTS:

THAT, we SIDNEY H. PARK and wife, RUTH M. PARK of Sherman County, Texas, being of sound mind and memory, realizing the uncertainty of life and the certainty of death, do hereby make, publish and declare this to be our last joint will and testament, hereby revoking any instrument of a prior date which may be offered as our will.

### I.

It is the will and wish of each of us that upon our death, our bodies be given a decent and Christian-like burial in accordance with our circumstances and condition in life.

### II.

It is further the will and wish of each of us that upon our death, any just debts we may owe be paid by our executor or executrix hereinafter named as promptly as practicable.

### III.

And we do each hereby give devise and bequeath to the other all of our property, real, personal or mixed, or of whatever kind the same may be and wherever situated, in full fee simple, to be owned, used and enjoyed by the survivor of us in such a way and manner as such survivor may elect.

### IV.

And we do each hereby name, constitute and appoint the other to be Independent Executor or Executrix of this our will and estate without bond and direct that no other or further proceedings be had in the Probate Court than shall be necessary to probate this will and to make and return an Inventory, Appraisement and List of Claims.

### V.

Upon the death of the last one of us, or in the event we should both come to our death at approximately the same time, then we give, devise and bequeath all of our property of every kind and wherever situated, as follows:

To our beloved daughters, Marie (Park) Reynolds, now of Dalhart, Texas and Royce (Park) Carter, now of Granville, Ohio we give, devise and bequeath all of our personal property, goods, chattels, livestock, farm equipment, grain, cash on hand or on deposit, bonds, obligations due us, and any and every kind of personal property, and this we give, devise and bequesth to them in full fee simple and in equal portions, share and share alike, to be used and enjoyed by them as they may see fit and proper. Provided, if at the death of the last one of us, either of our said daughters should be deceased leaving a child or children, then the share of our said personal property going to our said deceased daughter shall instead pass to her child or children in equal portions.

### VI.

Upon the death of the last one of us or in the event we should both come to

our death in the same accident or at approximately the same time, then we do each and both hereby give, devise and bequeath to our two said daughters, Marie (Park) Reynolds and Royce (Park) Carter, all of our real property of every kind and wherever situated together with the improvements attached thereto FOR AND DURING THEIR LIVES, IN JOINT AND EQUAL PORTIONS, SHARE AND SHARE ALIKE subject however, to the limitations and stipulations made in the next paragraph hereof.

### VII.

The devise of our real estate made to our two daughters as set forth in the last foregoing paragraph hereof, is subject to the following limitations and stipulations, viz.:

(a) Our said daughters shall not have power or authority to sell and convey said real estate during their lives and shall not divide the same but shall own it jointly and equally as a unit during their lives.

(b) They shall have and are here granted the power and authority to lease the same for oil, gas and other minerals or to lease the surface rights and shall have and are here granted authority to sell and convey royalty or mineral interest and to develop the same for irrigation or other purposes as they may see fit.

(c) Our said daughters shall have the full and free use of all income and revenues from our real estate during their lives in equal portions for such uses and purposes as they may see fit and proper.

(d) In the event of the death of either of our said daughters, the life estate herein devised shall continue under the stipulations and limitations herein made until the death of the last one of said daughters and during the life of such survivor, she shall have authority to handle and manage the same alone for the use and benefit of herself and the child or children of our deceased daughter. In that event, the survivor shall see that a proper and suitable person is appointed as guardian for such minor child or children and such survivor shall contribute at regular intervals to such guardian from the income of our said real property for the support, maintenance and education of the child or children of our deceased daughter, and shall at least anually (sic) make a full report to the guardian of said minors of all income and expenditures arising out of the handling of said estate during said year, and at the end of such year said survivor shall pay over to the guardian of such minors any remaining balance of the $\frac{1}{2}$ portion of income from said real property during said year.

### VIII.

Upon the death of the last one of our said daughters or in the event they should both come to their death in the same accident or at approximately the same (sic), then we do each and both hereby give, devise and bequeath all of our property held by our daughter or daughters at that time, whether the same be real, personal or mixed property or of whatever kind the same may be and wherever situated, to the child or children of our said daughters in full fee simple, that is to say the child or children of one of our said daughters whether there be one or more of said children shall have and receive the equal $\frac{1}{2}$ portion thereof and the child or children of the other of our said daughters, whether there be one or more of said children shall have and receive the other $\frac{1}{2}$ portion thereof.

### IX.

Upon the death of the last one of us, or in the event we should both come to our death in the same accident or at

approximately the same time, then we do each and both hereby name, constitute and appoint our said two daughters to be Independent Executrices of this our will and estate without bond and direct that no other or further proceedings be had in the Probate Court than shall be necessary to probate this will and to make and return an Inventory, Appraisement and List of Claims. If at the death of the last one of us, either of our said daughters should be deceased or if after qualifying as Executrix, one of our said daughters should die, then in either event the survivor of said daughters shall be permitted to qualify and act as Independent Executrix of this our will and estate without bond.

### X.

IN TESTIMONY WHEREOF, we each and both hereunto subscribe our names at Dalhart, Texas in the presence of the undersigned whom we have called as witnesses on this the *18* day of September, A.D.1953.

> /s/ Sidney H. Park TESTATOR
> /s/ Ruth M. Park TESTATRIX

Ruth died May 6, 1956. Sidney caused the September 18, 1953 joint will to be admitted to probate as her last will and he qualified as independent executor. The inventory and appraisement filed by Sidney designated all of Ruth's property as community, including her undivided one-half interest in all of Section 10, Block 3–B, GH & H Ry. Co. Survey, Sherman County, Texas. Sidney took possession of the decedent's property, retained it and had the use and enjoyment of it.

Thereafter on July 2, 1957, Sidney married Leona Blanche Park. Approximately two years later on July 29, 1959, he executed the following codicil:

### CODICIL TO
### LAST WILL AND TESTAMENT

STATE OF TEXAS } KNOW ALL MEN BY THESE
COUNTY OF DALLAM } PRESENTS:

That I, Sidney H. Park, being of sound mind and memory, and being desirous (sic) to make provision for my second wife, L. Blanche Park, do hereby make, publish and declare this as a Codicil to my Joint Will and Testament executed by myself and my first wife, Ruth M. Park, dated September 18, 1953, and provide that this Codicil shall be construed in addition to and not in lieu of (except where the same directly changes such original Joint Will) my said Joint Will.

### WITNESSETH:

FIRST: The properties herein bequeathed to my wife, L. Blanche Park, are in lieu of any and all claims and properties in which she may have a community interest, acquired by us subsequent to our marriage.

SECOND: I have previously provided that my said wife, L. Blanche Park, shall receive $10,000.00 in life insurance, which policy I do here redeclare to be her property.

In addition to such insurance I direct she shall receive the payments from the house in Elk City, Oklahoma. Additionally, I give, devise and bequeath unto my said wife, L. Blanche Park, all or any part of the household goods and equipment in our home, our personal automobile that we own at the time of my death, and $2,000.00 to be paid in cash to her. Also, I give and bequeath to her a

one-half interest in all U. S. Government Savings Bonds that are held jointly between myself and my said wife. Additionally, I direct that my estate, and the Executor thereof, shall pay to her the sum of $100.00 per month until said estate is settled and closed.

THIRD: The bequests herein made to my said wife are now my separate property and property accumulated subsequent to the death of my wife, Ruth M. Park, and constitute no part of the estate owned by me and my said wife, Ruth M. Park.

FOURTH: All the rest and residue of the Joint Will of myself and my wife, Ruth M. Park, dated September 18, 1953, I do here and now republish and redeclare as my said Last Will and Testament and direct that the same shall be construed in connection with this Codicil in determining the property rights of the devisees named therein and herein.

IN TESTIMONY WHEREOF, I hereunto subscribe my name at Dalhart, Texas, in the presence of the undersigned whom I have called as witnesses on this 29 day of July, 1959.

/s/ Sidney H. Park
Testator

Attached to the codicil were the executed witness clause and affidavits of self-proof.

During his last illness and hospitalization, Sidney executed another will on October 27, 1970. According to the terms of this will, he devised and bequeathed to Leona Blanche Park all of Section 10, Block 3–B, G. H. & H. Railway Survey, Sherman County, Texas, together with all appurtenances thereto and specific items of personal property. To his two daughters, Ruth Marie Reynolds and Royce Park Carter, Sidney left "all the rest and residue of my property of every description . . . in fee simple, without remainder to any one, share and share alike."

Sidney died in the hospital on November 5, 1970, without attempting to dispose of the real property owned by Ruth and him at her death, except as its disposition was designated in his 1959 codicil and in his 1970 will. Following his death, Leona Blanche Park offered his 1970 will for probate. Marie Park Reynolds and Royce Park Carter contested the application to probate the 1970 will and applied for probate of the 1953 will and the 1959 codicil. The County Court of Sherman County ordered the 1970 will admitted to probate and the contestants appealed to the District Court of Sherman County, the appeal being assigned cause no. 1888.

While the will contest was pending in the district court, plaintiff-appellants Marie Park Reynolds, Royce Park Carter, Barbara Louise Reynolds Alkofer and Sidney Carter Poholsky filed in the same district court this cause no. 1905 against defendant Leona Blanche Park individually and as executrix named in Sidney's 1970 will. The pleaded purpose of this suit is "to construe the wills" so as to establish the contractuality of the 1953 joint will and the consequences flowing therefrom.

When both causes were pending trial in the district court, contestants in cause no. 1888 and plaintiffs in this cause no. 1905 filed motions to consolidate the two causes for trial. Both motions were denied and cause no. 1888, the will contest, was first tried.

Following the jury verdict that Sidney signed the 1970 will and that he possessed testamentary capacity on the date of the will, the district court entered judgment admitting the 1970 will to probate and denying contestants' application for probate of the 1953 will and the 1959 codicil. Contestants appealed. The portion of the court's judgment admitting the 1970 will to probate and denying probate of the earlier instruments was affirmed, a remand being ordered with respect to that part of the court's judgment dealing with the appointment of a personal representative. Reynolds v. Park, 485 S.W.2d 807 (Tex.Civ. App.—Amarillo 1972, writ ref'd n. r. e.).

Thereafter, the parties in this cause no. 1905 filed respective motions for summary judgment. Plaintiffs' motion was accompanied by certified copies of the probate proceedings in the Estate of Ruth M. Park, deceased, the 1959 codicil and affidavits.

One of the affidavits was given by Pearl Ingram, a witness to the 1953 will and secretary to Ben Richards, the attorney who drafted the will. She deposed that she was well and personally acquainted with Sidney and Ruth, and that "BEN RICHARDS went over the will with them and reviewed it to them carefully and asked them if it was drawn as they wanted it. They replied that it was properly drawn and at that time SIDNEY H. PARK told BEN RICHARDS in my presence that he and his wife, RUTH, had agreed as to how they would leave their properties after their deaths and that the will was drawn as they wanted it to carry out such agreement."

Another affidavit was that of Marshall Cator, who stated he was a neighbor and was acquainted with Sidney for 36 years, and that on two occasions, once before Ruth's death and once afterwards while the deponent was serving as appraiser of her estate, Sidney mentioned the will. Cator quoted Sidney as remarking that he and Ruth had "fixed and signed a will so the property would go in trust for our children."

Also included was the affidavit of plaintiff Marie Park Reynolds who, in addition to recounting some family history and details concerning the probate of Ruth's will, set out a transaction with her deceased mother, Ruth. Ruth told the affiant in the presence of Sidney that they "had agreed as to how they would leave their properties at the time of their deaths," that they had had prepared the 1953 will, shown to affiant, which "they had signed bequeathing their properties as they had agreed."

Another affidavit was executed by F. H. Richards, the son of and practitioner with Ben Richards from before the time the 1953 will was signed until the latter's death in 1954. He stated that he drafted the 1959 codicil at the request of Sidney, who said, when he saw it, that it was properly prepared.

Defendant's motion for summary judgment was unsupported by any documentary proof other than the judgment entered in cause no. 1888 upon which she sought judgment in this cause. The motion also prayed for sustention of her contentions that the 1953 will republished by the 1959 codicil constituted one instrument speaking from the date of the codicil and that, therefore, the instrument is not subject to a contract or agreement of any type.

The trial court denied plaintiffs' motion and granted defendant's motion upon findings made and constructions given to the various testamentary instruments as stated in the summary judgment. Furthermore, the court made and filed twenty-one findings of fact and twenty-six conclusions of law in response to plaintiffs' requests therefor.

Plaintiffs complain of the court's actions in twelve points of error. However, since the thrust of the complaint is that plaintiffs are entitled to summary judgment, but a genuine issue of material fact precludes defendant's right thereto, the points will be discussed generally rather than seriatim.

### 2. Findings of Fact and Conclusions of Law

Findings of fact and conclusions of law have no place in a summary judgment proceeding, State v. Easley, 404 S.W.2d 296 (Tex.1966), for the only issue is whether or not there is a genuine issue of material fact in the case. Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557 (1962). Consequently, neither the findings of fact nor the conclusions of law made by the trial court are controlling on appeal and they have no effect whatever in determining the propriety of summary judgment in the proceedings. Rule 166-A, Texas Rules of Civil Procedure.

**308**

Nevertheless, since the trial court explicitly stated its determinations—whether they be denominated findings of fact, conclusions of law, or constructions of the testamentary instruments—upon which the summary disposition was made, it is necessary that certain of these matters be noticed. These are the grounds upon which the defendant sought, and the trial court stated for its rendition of, summary judgment, and which the defendant defends on appeal.

### 3. Theories on which Summary Judgment was Rendered

#### a. Res Judicata

The trial court determined that the first-tried will contest litigation in cause no. 1888—Reynolds v. Park, 485 S.W.2d 807 · (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.)—was res judicata of any issue that could be adjudicated under the 1953 will and the 1959 codicil. In the former proceedings, the 1953 joint will and the 1959 codicil were not, and the 1970 will was, adjudicated to be the last will of Sidney; but that adjudication is not res judicata of the issue of whether the 1953 joint will is contractual, for the issues are not the same. The issues involved in the will contest in cause no. 1888 were whether Sidney signed the 1970 will, particularly under undue influence, and had testamentary capacity at that time. Reynolds v. Park, supra. The issue in the instant cause no. 1905 is whether Sidney and Ruth executed the 1953 joint will pursuant to an oral agreement to dispose of their property in the manner stated in the will. Moreover, the trial court denied plaintiffs' motion to consolidate for trial all issues in both causes and, the present issue being specifically excluded from the issues finally adjudicated in Reynolds v. Park, supra, it could not have been considered or decided in the prior proceedings. There is, therefore, no basis for the application of the doctrine of res judicata. See State v. Standard, 414 S.W.2d 148, 151 (Tex.1967).

Furthermore, although Sidney's 1970 will revoked all former wills made by him, that revocation did not extend to nor affect any contract underlying the 1953 will. The contract, if any, became irrevocable upon Ruth's death, the 1953 will not having been theretofore revoked. Magids v. American Title Insurance Company, Miami, Florida, 473 S.W.2d 460 (Tex.1971). Thus, the adjudication that the 1970 will was entitled to probate as the last will of Sidney does not defeat any rights of the beneficiaries under the 1953 joint will if they prove it was contractual, despite their failure to secure its probate again as the last will of Sidney. Tips v. Yancey, 431 S.W.2d 763 (Tex.1968); Danner v. McMahan, 490 S.W.2d 213 (Tex.Civ.App.—Amarillo 1973 writ ref'd n. r. e.).

#### b. Non-contractual Effect of Republished Will

The trial court declared that the 1959 codicil and the republished 1953 will spoke as one instrument from July 29, 1959, the date of the codicil, and did not constitute a contract between Ruth and Sidney. It is correct that, as a general rule, a valid codicil containing a sufficient reference to a prior will operates as a republication of the will, insofar as the will is not altered or revoked by the codicil, so that the will and codicil are then regarded as one instrument speaking from the date of the codicil. Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731 (1955). But, obviously, the 1959 codicil, being executed by Sidney after Ruth's death, could not constitute a contract between them, nor could the execution of the codicil destroy an underlying contract, if any, on which the 1953 joint will was founded. If the 1953 will was executed pursuant to an oral agreement by the testators to make the disposition of their property as provided in the will, any codicil made after the death of Ruth and Sidney's probate of, and his taking under, the 1953 will could not have affected the rights of the beneficiaries under the will.

Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588 (1954).

■ The court further declared that the joint will as republished by the codicil does not reveal by any language therein that it was executed as a result of any contract. The absence of a recital in the 1953 will that it was executed in conformity to a compact between the testators does not establish as a matter of law that it was not made in furtherance of a contract. The declaration ignores both the principle that a contract underlying a joint will may be established by extrinsic evidence, Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165 (1946), and the implications of contractuality contained in the summary judgment affidavits.

### C. *"Full Fee Simple Title"* Language made any Contract Immaterial

The court construed the language the testators used in paragraph III in leaving "all of our property . . . in full fee simple title, to be owned, used and enjoyed by the survivor of us in such a way or manner as such survivor may elect" to vest fee simple title in Sidney, the survivor, without limitation, because the language of paragraph V was to apply only in the event of the death of the testators in a common disaster. From this construction, the court concluded that it was immaterial whether the joint will was executed under an oral contract between the testators, because there was no limitation placed on Sidney's full fee simple title to Ruth's property, which became subject to testamentary disposition by Sidney.

■ Paragraphs V and VI of the 1953 joint will are referenced to the disposition to be made of the personalty and realty, respectively, "(u)pon the death of the last one of us, *or* in the event we should both come to our death" (either, as stated only in paragraph VI, "in the same accident or") "at approximately the same time." (Emphasis supplied.) In the usual meaning of language, the coordinating par-

ticle "or," being disjunctive in nature, expresses an alternative. American National Ins. Co. v. Wilson State Bank, 480 S.W.2d 296 (Tex.Civ.App.—Amarillo 1972, no writ). Moreover, the same prefatory language is clearly employed in the alternative sense in the paragraph IX appointment of personal representatives to serve if neither testator is alive. Under this view and contrary to the court's construction, the provisions of paragraph V would attach, if they attached at all, upon the death of the last testator or in the event both testators perished in a common disaster. Although the trial court made no reference to paragraph VI, the same view is applicable to the provisions of that paragraph.

■ It is arguable that, if it were considered alone, paragraph III devised and bequeathed a fee simple estate to the survivor, notwithstanding the additional language, usually employed to denote a power conferred with an estate less than the fee, "to be owned, used and enjoyed by the survivor of us in such a way and manner as such survivor may elect." Yet, among the cardinal rules to be followed in construing wills are those that the true meaning of the will must be determined by the language used "within the four corners of the instrument," Republic National Bank of Dallas v. Fredericks, 155 Tex. 79, 283 S.W.2d 39 (1955), construed so as to give effect to every part thereof, Dulin v. Moore, 96 Tex. 135, 70 S.W. 742 (1902), and, if the real intention can be ascertained therefrom, then any particular paragraph of the will which, considered alone, would indicate a contrary intent must yield to the intention expressed by the whole instrument. McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (1887).

■ Defendant contends that the fee simple title given in paragraph III is controlling under the rule that a devise by language sufficient to pass the fee renders a subsequent limitation void for repugnancy. That rule, however, was rejected in McMurray v. Stanley, *supra*, it nevertheless

being recognized that where an estate is given in clear and decisive terms, it may not be cut down or taken away by any subsequent words that are not as clear and decisive. The estate conferred upon the survivor in paragraph III is not expressed in those clear and decisive terms normally used in drafting wills. As pointed out in *McMurray,* the fact that the testators deemed it necessary to confer upon the survivor an express power included in the estate named is a fact which may be considered in determining what actual estate it was intended the survivor should take; for, if the intent was that the survivor should take in fee absolutely, there was no necessity to expressly confer the powers every owner in fee possesses. Consequently, paragraph III cannot be looked to alone as controlling and, in considering the entire will and giving effect to every part of it, the limitations imposed by paragraphs V and VI are not repugnant to the estate given the survivor in paragraph III if the testators based their wills on a binding contract to leave their properties to the beneficiaries designated upon the death of the survivor. Harrell v. Hickman, 147 Tex. 396, 215 S. W.2d 876 (1948). If it is established that the joint will embodies the terms of an underlying contract, we observe that the words of the will are not of that specificity required by Murphy v. Slaton, *supra,* to encompass property acquired by Sidney in his own individual right after the death of Ruth.

### 4. Impropriety of Summary Judgment for Defendant

In the light of the foregoing, defendant did not establish her right to summary judgment as a matter of law, and her summary judgment cannot be affirmed for, insofar as her motion is concerned, she failed to demonstrate that there is no fact issue as to the existence of a binding contract underlying the 1953 joint will. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970). Plaintiffs' points of er-

ror, or portions thereof, directed to the impropriety of the summary judgment rendered are sustained.

### 5. Question of Plaintiffs' Entitlement to Summary Judgment

Having found that the trial court reversibly erred in granting the motion of, and in entering summary judgment for, defendant, we are required to determine the question of plaintiffs' entitlement to summary judgment under this record. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958). In Ellexson v. Ellexson, 467 S. W.2d 515 (Tex.Civ.App.—Amarillo 1971, no writ), we wrote at p. 519:

> The separately executed wills of two or more persons contained in a single instrument is a joint will. When the testators name each other as beneficiaries, the wills are reciprocal. A joint will becomes a mutual will, i. e., contractual, only when it is executed pursuant to an agreement between the testators to dispose of their property in a particular manner, each in consideration of the other. While the agreement for particular testamentary disposition may be proved by an instrument executed apart from the will or by the terms of the will itself, with or without the aid of oral testimony, the burden of proving the contractual nature of a will is upon the one who relies thereon.

Plaintiffs submit that the language of the 1953 joint will itself, or particularly when the will is supported by the proof accompanying their motion for summary judgment, compels the conclusion that, as a matter of law, the testators' wills were jointly executed pursuant to an oral agreement to make the testamentary disposition of their property as stated in the joint will.

### a. Language of the Joint Will

The 1953 wills of Sidney and Ruth are joint and reciprocal in form, but

there is no specific recital that the wills are mutual. The joint form alone does not prove an underlying contract necessary to make the wills mutual. Nye v. Bradford, *supra,* Aniol v. Aniol, 127 Tex. 576, 94 S. W.2d 425 (1936). While the joint will employs the words *we, our,* and *us,* these words by themselves do not establish the existence of a contract, Ellexson v. Ellexson, *supra;* City of Corpus Christi v. Coleman, 262 S.W.2d 790 (Tex.Civ.App.—San Antonio 1953, no writ), for these words may amount to nothing more than the natural usage of language by two testators executing their wills in one document. Concededly, the execution by Sidney and Ruth of their wills in joint form stating a common objective implies some prior understanding between them concerning their testamentary disposition. However, in order to impart mutuality to their wills and to be enforceable, their understanding must be more than a mere agreement to make wills or to make the joint will they actually made; it must involve the assumed obligation to dispose of their property as provided in the joint will, or not to revoke such wills, which are to remain in force at their deaths. 97 C.J.S. Wills § 1367 at p. 301. While all these matters may be considered as evidence in determining its nature, the 1953 will itself only establishes an understanding between Sidney and Ruth to execute their wills in joint form, but it does not demonstrate the absence of the fact issue whether they intended their understanding to constitute a binding contract.

In adopting this view, we are cognizant of the decisions holding that a joint will, executed by the testators at the same time and place before the same attesting witnesses and containing reciprocal provisions and *mutatis mutandis,* conclusively establishes the contractual character of the will, even in the absence of a recital therein that it was made pursuant to a contract. See, e. g., Murphy v. Slaton, *supra;* Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876 (1948); and particularly Nye v. Brad-

ford, *supra,* 144 Tex. at 624, 193 S.W.2d at 168, where, although reference was had to "direct evidence" that there was a contract, the court, considering the form and content of the will itself, said, "A will like that could not have been made without agreement between the testators that it should be so made." The will we review has those general features; nevertheless, the rationale of the decisions just cited is not dispositive of the issue here. Those decisions were reached after a conventional trial; they were not the summary disposition we are asked to make here from the will itself without recourse to extrinsic evidence that is available. So, in strictly applying the summary judgment rule, as we must, we cannot say as a matter of law that the form and content of the joint will conclusively evidences an underlying contract for the testamentary disposition provided in the will.

### b. Extrinsic Evidence of Mutuality

Consideration of plaintiff Marie Park Reynolds's affidavit, in which she recounts a transaction with her deceased mother, Ruth, in the presence of her deceased father, Sidney, concerning the joint will, is challenged by defendant on the ground that the evidence is prohibited by Vernon's Ann.Civ.St. art. 3716, frequently referred to as the "Dead Man's Statute." Plaintiffs respond that the transaction was with Ruth whose personal representative is not a party to this suit instead of with Sidney against whose executrix judgment is sought and, therefore, evidence of the transaction is admissible.

The policy is to strictly construe the language of the statute and not to extend the construction beyond the plain meaning thereof. Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513 (1942). Notwithstanding, we consider the circumstances render the evidence inadmissible. Affiant Reynolds is one of the plaintiffs seeking judgment against Sidney's executrix on the theory of mutuality of the joint will executed by Sidney and Ruth. Any conversation

plaintiff Reynolds had with Ruth in the presence of Sidney about their agreement to execute the will necessarily involves Sidney's participation in the transaction as an agreeing co-testator and, in effect, constitutes evidence of a transaction with him. As such, testimony of the transaction is barred by the statute, and the affidavit will not be considered.

Neither the affidavit executed by Pearl Ingram nor the one given by Marshall Cator establishes the mutuality of the will with that certainty required in summary judgment proceedings. The Ingram affidavit does not quote Sidney's words and so far as the instrument reveals, the remarks attributed to Sidney—"he and his wife, RUTH, had agreed as to how they would leave their properties after their deaths and that the will was drawn as they wanted it to carry out such agreement"—are the interpretation placed by the affiant on the words Sidney actually said. Without more certainty of expression, it cannot be said with assurance that Sidney meant the testators had bindingly agreed on their testamentary disposition rather than that they had merely agreed to make the joint will they made.

Although the Cator affidavit cites the words uttered by Sidney, the language is not an absolute assertion that the testators had executed mutual wills. Sidney's statements that he and Ruth had "fixed and signed a will so the property would go in trust for our children," could reasonably have been a comment on the provisions of the will.

 Furthermore, the affidavit evidence offered to prove the contractuality of the will must be considered in connection with the entire summary judgment record. As mentioned previously, the will itself has no express recital of mutuality. The 1959 codicil was prepared by a member of the law firm in which the 1953 joint will was drafted. According to the affidavit of attorney Richards, Sidney said the codicil was properly prepared. The codicil

provides that it "shall be construed in addition to and not in lieu of (*except where the same directly changes such original Joint Will*) my said Joint Will." (Emphasis supplied.) These are circumstances which must be given consideration in testing the affidavit evidence to establish the intent to contract. When the summary judgment proof is properly tested, it does not demonstrate that there is no fact issue as to the mutuality of the joint will, particularly since the underlying contract, if any, must be established by full and satisfactory evidence without the indulgence of presumption or inferences. Magids v. American Title Insurance Company, Miami, Florida, *supra*.

The points of error, or portions thereof, by which plaintiffs assert their entitlement to summary judgment are overruled. The concessions of fact made by plaintiffs in the event summary judgment was rendered in their favor are not noticed.

### 6. Judgment

There remaining unresolved the material fact issue as to whether the 1953 joint will was mutual, i. e., contractual, neither of the opposing parties is entitled to summary judgment, and summary judgment was erroneously rendered for defendant. The summary judgment rendered is reversed, and the cause is remanded to the trial court.

### ON PLAINTIFF–APPELLANTS' MOTION FOR REHEARING

The fourth sentence in the second paragraph appearing under heading *5a. Language of the Joint Will* in our original opinion reads: "Those decisions were reached after a conventional trial; they were not the summary disposition we are asked to make here from the will itself without recourse to extrinsic evidence that is available." In the interest of accuracy, that sentence is deleted and substituted therefor is the sentence reading: "Those decisions were reached after a conventional trial or, as was the situation in *Harrell*,

from the construction of an admittedly contractual joint will; they were not the summary disposition we are asked to make here from the questionable will itself without recourse to extrinsic evidence that is available."

The points of error presented in plaintiff-appellants' motion for rehearing have been reviewed and considered. The subject matters of these points were considered in the disposition made of the appeal in our original opinion, and the motion for rehearing has not persuaded us to depart from that disposition.

Plaintiff-appellants' motion for rehearing is overruled.