Norma WIEMERS, et al., Appellants,

v.

Edwin J. WIEMERS, et al., Appellees.

No. 04–82–00274–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 31, 1983.

Rehearing Denied Nov. 30, 1983.

James L. Drought, Brite, Drought, Bobbit & Halter, San Antonio, for appellants.

Robert P. Sims, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

Appellants, Norma Wiemers, Evelyn Marie Grell, Dorothy Ann Fowler, and James Edward Wiemers petitioned the probate court for a declaratory judgment that a joint will was contractual and irrevocable and that a constructive trust be impressed upon certain property. The trial court determined the joint will to be noncontractual. Whether that determination was error is the only question before this court. We affirm the judgment.

Appellees (Edwin J. Wiemers, Milton Christian Wiemers and Minnie A. Wiemers Buss) and appellants submitted their case on the agreed statement of facts. TEX.R. CIV.P. 263. George H. Wiemers and his wife, Ida J. Wiemers executed a joint will on December 5, 1951. The will states, in part, "... [W]e do hereby make, publish and declare this instrument to be our joint and individual last will and testament, that is, it expresses our joint wishes and desires, and the same is to be the last will and testament of each of us, ..."

### FIRST.

It is our joint will and desire that the survivor of our marital union shall have and be entitled to the full possession, use and enjoyment of all property, real and personal, separate and community which we or either of us may own at the time of death of the one who dies first; and that

at the time of the death of the survivor of our union, aforesaid, that the whole of our real estate, which we now own and which constitutes our homestead, including all improvements located thereon, shall pass to and vest, in fee simple, to our son, Wesley C. Wiemers, subject, however, to the payment by him, the said Wesley C. Wiemers, the sum of Five Hundred (500) Dollars, to each of our other children, namely: Edwin J. Wiemers, Milton C. Wiemers, Marvin G. Wiemers and Minnie A. Buss, wife of Chas. Buss, the payment of the aforesaid sums of money by the said Wesley C. Wiemers, as aforesaid, to be secured by a vendor's lien on the said land and premises, constituting our homestead, as aforesaid. The said sums of $500.00, aforesaid, to be payable by the said Wesley C. Wiemers, to those entitled thereto, above named, or to their heirs, within *six (6)* months from the date of the death of the surviving spouse herein, as aforesaid. The land and premises, covered by and included in our aforesaid homestead, constitute at this time, 98 acres of land, out of the A.L. Kunkendall Survey No. 21, and 27 acres of land out of the Wm. Bryan Survey No. 22, together with all improvements located thereon, situated in Medina County, Texas.

## SECOND.

In accordance with the aforesaid joint wish and desire of the undersigned, I, the said Geo. H. Wiemers, do hereby give, devise and bequeath to my beloved wife, Ida J. Wiemers, a life estate in and to the 125 acres of land, consisting, as aforesaid, of 98 acres out of the Kuydendall Survey No. 21 and 27 acres out of the Bryan Survey No. 22 together with all improvements located thereon, for and during the balance of her life, to have, hold, possess and enjoy until her death; and I do hereby give, devise and bequeath to my son, Wesley C. Wiemers, the whole of the remaining interest in and to my part and portion of said 125 acres and improvements thereon, to have, hold and own, in

fee simple, to manage, control and dispose of as he may wish and see proper, subject, however, to the payment by him, the said Wesley C. Wiemers, of the sum of Five Hundred (500) Dollars, within *six (6)* months from the date of his mother's death, that is, the death of the said Ida J. Wiemers, to each of my other four children, namely: Edwin J. Wiemers, Milton C. Wiemers, Marvin G. Wiemers and Minnie A. Buss (our daughter), wife of Chas. Buss, the payment of which said sums of money a vendor's lien shall exist against the aforesaid 125 acres of land, together with the improvements located thereon, until the full and final payment of the aforesaid sums of money to the above named parties, or their heirs.

## THIRD.

And I, the said Ida J. Wiemers, in accordance with the aforesaid joint wish and desire of the undersigned, do hereby give, devise and bequeath to my beloved husband, Geo. H. Wiemers, a life estate in and to the said 125 acres of land, consisting of 98 acres out of the Kuykendall Survey No. 21 and 27 acres out of the Bryan Survey No. 22, together with all improvements thereon, for and during the balance of his life, to have, hold, possess and enjoy until his death; and I do hereby give, devise and bequeath to my son, Wesley C. Wiemers, the whole of the remainder interest in and to my part and portion of the aforesaid 125 acres of land and improvements thereon, to have, hold and own, in fee simple, to manage, control and dispose of as he may wish or see proper, subject, however, to the payment by him, the said Wesley C. Wiemers, of the sum of Five Hundred (500) Dollars to each of my other four children, namely: Edwin J. Wiemers, Milton C. Wiemers, Marvin G. Wiemers and Minnie A. Buss (our daughter), wife of Chas. Buss, the payment of which said sums of money a vendor's lien shall exist against the aforesaid 125 acres of land, together with the improvements located thereon, until the full and final payment of the

aforesaid sums of money to the above named parties, or their heirs.

## FOURTH.

And in accordance with the aforesaid joint wish and desire of the undersigned, I, the said Geo. H. Wiemers, do hereby give, devise and bequeath to my beloved wife, Ida J. Wiemers, all personal property, including any insurance money which may be collected on any policies or certificates issued to me and payable to my wife or to my estate, which I may own or be, in any manner, interested at the time of my death, to have, hold, possess and enjoy, and with the right to use and enjoy and to sell or otherwise dispose of, for an during her lifetime; and if any part or portion of such personal property, remains undisposed of, after the death of my wife, the same shall vest in and belong to my five children share and share alike, namely: Edwin J. Wiemers, Milton C. Wiemers, Marvin G. Wiemers, Minnie A. Buss (our daughter) and the said Wesley C. Wiemers, and/or to the heirs of any deceased child of our said five children.

## FIFTH.

And I, the said Ida J. Wiemers, in accordance with our joint wish and desire aforesaid, do hereby give, devise and bequeath to my beloved husband, Geo. H. Wiemers, all personal property, including any insurance money which may be collected on any policies or certificates issues to me and payable to my husband or to my estate, which I may own or be, in any manner, interested at the time of my death, to have, hold, possess and enjoy, and with the right to use and enjoy and to sell or otherwise dispose of, for and during his lifetime; and if any part or portion of such personal property, remains undisposed of, after the death of my husband, the same shall vest in and belong to my five children, share and share alike, namely: Edwin J. Wiemers, Milton C. Wiemers, Marvin G. Wiemers, Minnie A. Buss (our daughter) and the

said Wesley C. Wiemers, and/or to the heirs of any deceased child or our said five children.

* * * * * *

George H. Wiemers died on January 27, 1960 and his joint will was probated thereafter. His widow, Ida, executed a new will on May 16, 1972, revoking her earlier joint will. Her 1972 will was admitted to probate on October 20, 1982, after her death on September 16, 1981. It was agreed that all of the property acquired during the marriage was community property and, further, that 27 acres of the original 125 acres had been conveyed by George and Ida before the death of either.

Ida J. Wiemers's 1972 will discloses that she bequeathed appellees, her children, Minnie A. Buss, Edwin J. Wiemers, and Milton G. Wiemers each an undivided one-fourth interest "in and to all of the property, real, personal or mixed of which I may die seized and possessed..." (totalling three-fourths undivided fee simple interest of her one-half interest). The stipulated facts show that Marvin, one of the sons, had died earlier without having married or having issue and that the other son, Wesley C. Wiemers, had predeceased her in 1980, leaving his widow and three children. She also bequeathed an undivided one-fourth interest in and to all of her property to two grandchildren (Wesley's daughters), Dorothy Fowler and Evelyn Grell, share and share alike in fee simple. Appellants herein are these two grandchildren, their mother, Norma Wiemers, who is Wesley's widow, and Wesley's son, James.

In the will Ida states the reason for her manner of division of property:

... I love him [Wesley] the same as I love each of my other children. WESLEY C. WIEMERS did, however, receive, as sole beneficiary the estate of my deceased husband, his father, ... under and by virtue of the provisions of a Will dated December 5, 1951, which has been duly admitted to probate by the Probate Court of Medina County, Texas....

The parties all recognize as true that Wesley C. Wiemers did, in fact, receive the land that constituted his father's portion of the community estate upon the death of that testator. Appellees do not contest appellants' right to an undivided one-half interest in the property. The appellants, therefore, presently own and would continue to own one-half of the real property, with the two grandchildren appellants also owning an additional one-fourth interest (totalling three-fourths interest), should the trial court's judgment be affirmed. The appellants, however, would own all the property, conditioned upon payment of the specified sums of money to appellees, should the trial court's judgment be determined incorrect.

 In the preamble the subject will (1951), is denoted as "our joint and individual" will. There is an absence of any recital that it was executed as the result of a compact or in furtherance of a contract.[1] Moreover, we find no extrinsic evidence was presented to show an underlying contract, such as evidence that an agreement was made. *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165, 167–68 (1946). *Reynolds v. Park,* 521 S.W.2d 300, 309 (Tex.Civ.App.— Amarillo 1975, writ ref'd n.r.e.). The 1951 will of George and Ida is joint and reciprocal in form but contains no specific recital that the wills are mutual. Although the joint will employs the terms *we, our joint wish and desire, our wish, our desire,* these words by themselves do not establish the existence of a contract. *Ellexson v. Ellexson,* 467 S.W.2d 515, 519 (Tex.Civ.App.— Amarillo 1971, no writ). A joint will becomes a mutual and contractual will only when it is executed pursuant to an agreement between the testators to dispose of their property in a particular manner, each in consideration of the other. While the agreement for particular testamentary disposition may be proved by an instrument executed apart from the will or by the terms of the will itself, with or without the aid of oral testimony, the burden of proving the contractual nature of a will is upon the one who relies thereon. *Id.*

Paragraph "FIRST" refers to the disposition to be made of the real estate. "SECOND" devises George's interest, called "my part and portion of [the real estate]," to his son, Wesley in fee simple, with a life estate to his wife, Ida. It specifies the sum of $500.00 is to be paid by Wesley to his siblings within six months of the date of Ida's death. Paragraph "THIRD" gives Ida's interest in the real estate to Wesley, again stating "my part and portion," subject to payment by Wesley of the sum of $500.00 to his siblings. However, Ida did not specify when or based upon whose death, the payments should be made by Wesley. An obvious conclusion then could be reached that the payments should be made only when Ida died, regardless which spouse died first.

 In order for a joint will to be shown to be mutual and contractual by its own terms and provisions, the will must set forth "a comprehensive plan for disposing of the whole estate of either or both of the joint makers." *Knolle v. Hunt,* 551 S.W.2d 755, 759 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). If the same document contains both the will and the contract, it is the contractual portion of the will and not the will itself which is irrevocable. *Magids v. American Title Insurance Co.,* 473 S.W.2d 460, 464 (Tex.1971). Thus, wills are revocable unless a binding contract forbids revocation. In the instant case under the terms of the will neither spouse was undertaking, attempting, or professing to dispose of the other's property, (i.e., "my part and portion.").

 In order to prevail the party asserting a binding contract must prove more than a mere agreement to make reciprocal

---

1. TEX.PROB.CODE ANN. § 59A (Vernon 1980)
 (a) A contract to make a will or devise, or not to revoke a will or devise, if executed or entered into on or after September 1, 1979, can be established only by provisions of a will stating that a contract does exist and stating the material provisions of the contract.
 (b) The execution of a joint will or reciprocal wills does not by itself suffice as evidence of the existence of a contract. Acts 1979, 66th Leg., p. 1746, ch. 713, § 10.

wills. *Crain v. Mitchell,* 479 S.W.2d 956, 958 (Tex.Civ.App.—Fort Worth 1972, writ dism'd). The agreement must involve the assumption of an obligation to dispose of the property as therein provided, or not to revoke such will, which is to remain in force at the death of the testators. *Kastrin v. Janke,* 432 S.W.2d 539, 542 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

▪ Contracts to make wills "are reviewed with caution; they can be established only by full and satisfactory proof; and no presumptions or inferences will be indulged in favor of them..." *Magids v. American Title Insurance Co., supra* at 464; *Crain v. Mitchell, supra* at 958 (omitting citations).

▪ By the terms of this joint will each testator plainly could dispose of his or her own personal estate as desired during his or her lifetime and, further, the survivor plainly could dispose of any personal property received from the spouse. *See Pryor v. Pryor,* 607 S.W.2d 648 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). We view the joint will as two wills encompassed in the same instrument. Moreover, all the property was community property, and the real estate was the homestead. Ida, therefore, remained on the real property as her right without disarranging George's disposition of his portion of the property. The record and arguments demonstrate that Wesley acquired the remainder interest in his father's one-half interest in the real estate upon probate of his will in 1961 and that Ida never opposed his control of the property.

We have heretofore stated that no agreement of a contractual nature was proved by extrinsic evidence, and the will itself does not contain an agreement indicating the will to be irrevocable. We hold, accordingly, the trial court, looking to the agreed statement of facts and to the will as whole, correctly found by declaratory judgment that the will was not mutual and contractual.

The judgment is affirmed.